HOWARD TRIMBLE v. KENNETH D. IRWIN et ux., and Seaboard Lacquer, Inc.

VIRGINIA TRIMBLE v. KENNETH D. IRWIN et ux., and Seaboard Lacquer, Inc.

SANDRA TRIMBLE v. KENNETH D. IRWIN et ux., and Seaboard Lacquer, Inc.—441 S.W.2d 818.

Eastern Section. November 15, 1968.

Certiorari Denied by Supreme Court March 3, 1969.

466

Bishop, Thomas, Leitner, Mann, & Milburn, Chattanooga, for plaintiffs in error, Howard Trimble, Sandra Trimble, and Virginia Trimble.

O'Rear, Lanham, Thomasson, Wassick, & Hyde, Chattanooga, for defendants in error, Kenneth D. Irwin et ux.

Strang, Fletcher, Carriger & Walker, Chattanooga, for defendant in error, Seaboard Lacquer, Inc.

COOPER, J. Howard Trimble, Virginia Trimble and Sandra Trimble were injured in an explosion and fire that occurred while they were inspecting a newly-constructed dwelling. The Trimbles filed suit in the Circuit Court of Hamilton County, joining as defendants both their prospective landlords, Kenneth D. Irwin and wife Velma Irwin, and the Seaboard Lacquer, Inc., the manufacturer of a floor-finishing product that had been applied to the floors of the house a few hours prior to the fire. The plaintiffs charged, in substance, that the Irwins were guilty of proximate negligence in representing to the plaintiffs, as prospective tenants, that the house was ready for occupancy when they knew or should have known that explosive fumes or gases were confined in the house, and in failing to warn the plaintiffs of the

dangerous condition. The substance of plaintiffs' asserted cause of action against Seaboard Lacquer, Inc. was negligence in failing to adequately warn users of its product of the full extent of the danger so that adequate precautions would be taken to protect those properly on the premises from injury.

The trial judge dismissed the suits against Seaboard Lacquer, Inc. at the close of the plaintiff's proof. At the close of all proof, the jury returned verdicts in favor of the plaintiffs against the defendants Irwin, awarding Virginia Trimble $1,000.00 and Sandra Trimble $100.00 as damages for personal injuries sustained by them, and awarding Howard Trimble $5800.00 for loss of the services of his wife and daughter and for medical expenses incurred in providing them with necessary medical treatment.

The Trimbles appealed insisting that the trial judge erred in dismissing their suit against Seaboard Lacquer, Inc. The Irwins also appealed contending that there was no evidence tending to show that they "had any knowledge of any hazardous condition or defect [on] the premises," and that the trial judge should have directed verdicts in their favor.

The evidence shows the defendants Irwin were in the business of constructing houses for sale and/or for rent. Mr. Irwin, an experienced carpenter, actively supervised construction of the houses, doing carpenter work himself and contracting for other skilled work, viz., plumbing, electric wiring, floor-finishing, etc.

The Irwins began the construction of two houses in the Shady Brook Subdivision of Hamilton County in the summer of 1966. Shortly thereafter, the Trimbles ex-

pressed an interest in renting one of the houses as soon as construction was completed.

There is evidence that in the late afternoon of September 1, 1966, Mrs. Irwin called the Trimbles and told them the house they wanted was completed and ready for occupancy, that the rental period began that day, that there were other prospective tenants, and that if the Trimbles wanted the house they had to let her (Mrs. Irwin) know by the next morning. On being informed by Mr. Trimble that his wife had not yet seen the house, Mrs. Irwin reiterated that she had to have the Trimbles' answer by morning.

The Trimbles, as a family, drove to the house, arriving at dusk. They gained entrance through an unlocked side door and proceeded to inspect the house. There was sufficient light from the headlamps of plaintiffs' automobile to make out the general arrangement of the rooms, but not the decor. Howard Trimble struck a match so his wife could see the color of the kitchen cabinets. There was an immediate explosion and flash fire, resulting in injuries to the plaintiffs. The fire was of very short duration and caused no damage to the house. In fact, the only thing in the house ''afire'' was the contents of a box stored under the cabinets in the kitchen. This was kicked out the door by Howard Trimble to prevent it catching the house on fire.

There was evidence that C. W. Harvey, Jr., had applied a floor sealer on all floors in the house except the kitchen floor, finishing at about 4:00 P.M. on September 1st. Mr. Harvey, who was called as a witness by the plaintiffs, testified the floors were dry and there were no dangerous vapors in the house when he locked-up at

6:00 P.M., and that he knew of no flammable substance in the kitchen.

Mr. Irwin admittedly knew of the application of the floor-sealer and knew from experience that the floor-sealer was highly volatile and combustible. The evidence further shows that Mr. Irwin was in the house between the time Mr. Harvey finished applying the floor-sealer and the time Mr. Irwin had his wife 'phone the Trimbles. While there, Mr. Irwin measured the kitchen floor and had the opportunity to see and learn the contents of the box under the kitchen cabinets, which was the only material to continue to burn after the explosion and flash fire.

■■ We think the foregoing makes the issue of defendants' negligence a jury question. In our opinion a jury reasonably could conclude from the above evidence that the defendants knew or should have known that plaintiffs, in order to be in a position to comply with the condition Mrs. Irwin placed on the leasing of the house, would inspect the rental house immediately after receiving the call from Mrs. Irwin. As prospective tenants properly on the premises, the plaintiffs would be invitees. 3 A.L.R.3rd 976, 980-981. As a consequence, the defendants would be obligated with the duty of exercising ordinary care to see that the rental house was in a reasonably safe condition for plaintiffs' inspection. This would include the duty of removing or warning against a dangerous condition which the defendants knew or, in the exercise of ordinary care, should have known to exist and which was of such a nature the plaintiffs reasonably could not be expected to discover in time to avoid injury to themselves. Broome v. Parkview, Inc., 49 Tenn.App. 725, 359 S.W.2d 566; Interstate Life & Accident Insur-

ance Company v. Cox, 55 Tenn.App. 40, 396 S.W.2d 80, 83; Walls v. Lueking, 46 Tenn.App. 636, 642, 332 S.W.2d 692. We think the jury reasonably could conclude from the above evidence that the defendants knew, or should have known of the gaseous vapors in the house—whether they came from the floor-sealer or from the box under the kitchen cabinets—and breached the duty owed plaintiffs by failing to remove the gases or to warn the plaintiffs of their presence; and that this breach of duty was the proximate cause of the fire and resulting injuries to plaintiff. Consequently, we are of the opinion the trial judge acted properly in refusing to direct a verdict for the defendants Irwin.

The Trimbles, in their assignments of error, question the action of the trial judge in directing a verdict for the manufacturer of the floor-sealer used in the Irwin house. The Trimbles contend that a jury reasonably could find from the evidence that the defendant manufacturer was guilty of proximate negligence in that he failed to adequately warn the user of the floor-sealer that flammable vapors could be present after the specified drying period of the sealer.

One who manufactures and sells to the public a product he knows, or in the exercise of reasonable care should know, to be inherently or imminently dangerous in the use for which it is intended, because of its flammable or explosive qualities, is under a duty to exercise reasonable care to prevent harm resulting from the use of the product. Included in this duty to exercise reasonable care is the duty to provide adequate instruction for the products use and to adequately warn the user of the danger associated with the use of the product. 80 A.L.R. 2d 488, 499, 502; Restatement of Torts 2d, Sec. 388, et

seq.; Prosser, Law of Torts, 3rd Ed., p. 666. "The duty to warn is of especially compelling force where the seller knows that the product danger is one of which the purchaser [or user] cannot reasonably be expected to be aware. There is, however, no duty to warn of dangers of which the seller may reasonably expect the purchaser to be aware." 80 A.L.R.2d 502, 503.

The defendant manufacturer, in its effort to perform its duty to warn and instruct users of its product, labelled each bucket of floor-sealer used in the Irwin house calling the user's attention, among other things, to the volatile (82%) nature of the sealer and to the fact that it was "extremely flammable." In addition was the following specific warning:

"DANGER — FLAMMABLE MIXTURE
DO NOT USE NEAR FIRE OR FLAME
N.Y.F.D.C. of A. No. 2484
VAPOR HARMFUL
CONTAINS: TOLUOL, KETONES,
ISOPROPYL ALCOHOL
FLASH POINT UNDER 70° F.

Turn off all pilot lights before using. Keep away from heat, sparks and open flame. Use with adequate ventilation. Avoid prolonged contact with skin and breathing of vapor and spray mist. Close container after each use. Do not take internally. Do not transfer contents to bottles or other unlabelled containers. Harmful or fatal if swallowed. If swallowed do not induce vomiting.

CALL PHYSICIAN IMMEDIATELY.
KEEP OUT OF REACH OF CHILDREN."

The manufacturer also pointed out on the label that the sealer would dry dust-free within 20 minutes and that the user should "allow one hour drying time before applying second coat." [See Appendix of this opinion for the complete labels.]

█ █ An adequate warning is one calculated to bring home to a reasonably prudent user of the product the nature and the extent of the danger involved in using the product. In this case, the undisputed evidence shows that C. W. Harvey, Jr., who applied the floor-sealer, was familiar with the danger involved in using the floor-sealer and with the manufacturer's warning and undertook to comply with the manufacturer's instructions. But, aside from the specialized knowledge of Mr. Harvey, we think the manufacturer's warning in this case when read in its entirety effectively conveyed the message that the floor-sealer was highly volatile and that the vapors, having a flash point of less than 70° fahrenheit, were extremely flammable, thus making the adequate ventilation called for by the manufacturer a necessity. Common sense dictated that the danger from the vapors would continue to exist until the vapors were dispersed into the outside atmosphere, and that the time necessary for this to take place would depend on the efficiency, or the adequacy, of the ventilation.

Being of the opinion that reasonable men must agree that the manufacturer gave adequate warning of the dangers associated with the use of the floor sealer, we find no negligence on the part of the manufacturer, and no error in the trial judge's action in directing a verdict for Seaboard Lacquer, Inc.

The judgments entered below are affirmed. Costs incident to the appeal are adjudged equally against Howard

Trimble and wife, Virginia Trimble, and their sureties, and against Kenneth D. Irwin and wife, Velma Irwin, and their sureties.

McAmis, P. J., and Parrott, J., concur.

EXHIBIT "A"

## FIVE GALLONS

**BINDS and SEALS WOOD FLOORS**

18% Non-Volatile (Nitro-Cellulose, Maleic Rosin, Methyl
Ester of Rosin, Zinc Stearate) 82% Volatile (Toluol,
Ketones, Isopropyl Alcohol)

SEABO

Flor-Seal

No. 1230

NON-GRAIN RAISING

WATER PROOF
DRIES IN 20 MINUTES

**SHAKE WELL BEFORE USING**
### DANGER:
EXTREMELY FLAMMABLE, VAPORS HARMFUL

SKIN AND EYE IRRITANT

## SEABOARD LACQUER, INC.
### BALTIMORE, MARYLAND 21215

## HARMFUL OR FATAL IF SWALLOWED
## SEE CAUTIONS ELSEWHERE ON CAN

EXHIBIT "B"

# DANGER — FLAMMABLE MIXTURE
# DO NOT USE NEAR FIRE OR FLAME

### N.Y.F.D. C of A. No. 2484

VAPOR HARMFUL

CONTAINS: TOLUOL, KETONES,

ISOPROPYL ALCOHOL

FLASH POINT UNDER 70° F.

Turn off all pilot lights before using. Keep away from heat, sparks and open flame. Use with adequate ventilation. Avoid prolonged contact with skin and breathing of vapor or spray mist. Close container after each use. Do not take internally. Do not transfer contents to bottles or other unlabelled containers. Harmful or fatal if swallowed. If swallowed do not induce vomiting, CALL PHYSICIAN IMMEDIATELY.

KEEP OUT OF REACH OF CHILDREN

## DIRECTIONS

● New and Old Floors:

Sand floors with power sanding machine using 2/0 (100-grit) paper for final sanding operation. Remove all dust.

● Apply first coat of FLOR-SEAL directly from container using clean wide brush. Flow on freely. Do not brush excessively.

● FLOR-SEAL will dry dust-free in 20 minutes. Allow one hour drying time before applying second coat.

● Hand sand floor lightly using fine paper and remove all dust before applying second coat.

   ● Note: If necessary to fill nail holes and cracks, use 10% white lead putty, tinted to desired shade, after first coat application.

● For second coat you may use FLOR-LAC or GLOS-VAR or any other recommended floor finish.

● Use FLOR-SEAL REDUCER to clean brushes, or thin material if necessary.

● Do not use on asphalt tile, rubber tile, plastic tile, or linoleum.