Benjamin Edward YOUNG, Jr., Carolyn L. Young, Plaintiffs-Appellants,

v.

RELIANCE ELECTRIC COMPANY, the Carborundum Company, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Feb. 23, 1979.

Certiorari Denied by Supreme Court July 30, 1979.

---

**664**

Thomas Wardlaw Steele and Joel M. Leeman, Gullett, Gilbert, Steele, Sanford & Robinson, Nashville, for plaintiffs-appellants.

John K. Maddin Jr. and Malcolm L. McCune, Gracey, Maddin, Cowen & Bird, Ward DeWitt, Jr. and Lawrence C. Maxwell, Trabue, Sturdivant & DeWitt, Nashville, for defendants-appellees.

## OPINION

DROWOTA, Judge.

Plaintiffs, Benjamin Edward Young, Jr., and his wife, Carolyn L. Young, brought this products liability action in the Circuit Court of Davidson County to recover for injuries incurred by plaintiffs as a result of a "fire" in the electrical control cabinet of a "shot-peening" machine in which plaintiff, Benjamin Young, Jr., was working during the course of his employment. Plaintiff sues on strict liability and negligence theories. Defendants are the manufacturer of the electrical control panel (Reliance Electrical Co.), the manufacturer of the entire shot-peen machine which includes the electrical control panel (Carborundum Co.) and the installer of the panel (AAA Electric, Inc.). At the conclusion of the trial before a jury the court granted a motion for a directed verdict in favor of AAA Electric, Inc. and took under advisement the motions for directed verdicts on behalf of the re-

maining defendants. The jury found for plaintiff, Benjamin Young, Jr., in the amount of $60,000.00 and in favor of Carolyn L. Young in the amount of $10,000.00. The trial court then granted defendants motions for a directed verdict and, upon additional defendants' motions, granted a new trial conditioned on a reversal of the directed verdicts. The conditional motions for a new trial were granted on the ground that the evidence preponderated against the jury verdict. Plaintiffs have appealed the trial court's action with regard to defendants Reliance and Carborundum but not with regard to AAA Electric, Inc.

Plaintiff makes two assignments of error, one attacking the propriety of the directed verdicts and the other attacking the propriety of the conditional order for a new trial.

### I.

The first assignment of error draws us into a familiar inquiry which is well described in the recent case of *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn.1977).

> A post-trial motion for the entry of judgment in accordance with a motion for a directed verdict made during the trial must be gauged by the usual rules relating to directed verdicts. Those rules require that the trial judge, and the appellate courts, take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion. [citations omitted]

551 S.W.2d at 685.

Evidence, sufficient under this standard to go to the jury, may be direct or circumstantial or a combination of the two. *Chisholm v. Bohannon*, 558 S.W.2d 446 (Tenn.App.1977); *Browder v. Pettigrew*, 541 S.W.2d 402 (Tenn.1976). In the case of circumstantial evidence the relevant inquiry is could reasonable minds differ on the question whether the evidence equally supports the inconsistent theories of the plaintiff and the defendant. If they could then a directed verdict is improper. *Browder v. Pettigrew*, supra at 405; *Phillips v. Newport*, 28 Tenn.App. 187, 187 S.W.2d 965 (1945). With regard to the use of inferences in evaluating the evidence, it is established that a fact may be inferred from circumstantial evidence and such fact may then be the basis of a further inference to the ultimate or sought-for fact. *Stinson v. Daniel*, 220 Tenn. 70, 414 S.W.2d 7 (1967) and cases there cited.

The bill of exceptions in this two weeks trial is voluminous, consisting of 1398 pages, so for the purposes of this review we will only summarize the salient details.

Plaintiff is a maintenance electrician employed by the Avco Corp. in its Nashville plant. Avco is engaged in the business of constructing the wings of the Lockheed L–1011 airplane. Part of the construction process involves passing aluminum wing parts through a "shot-peen" machine. In this machine the parts are bombarded with small steel shot in order to form the wing, and by compressing the metal, to strengthen the wing. In the same building which contained two such shot-peening machines Avco also operated a skin mill where sheets of aluminum were cut to size, and a burr and blending machine where rough edges and joints on aluminum pieces were ground smooth. These processes generated highly flammable aluminum dust. While ventilation systems were present it appears some aluminum dust escaped into the atmosphere inside the building.

There is evidence to indicate that because of the aluminum dust the electrical control panels for the shot-peening machines were to be housed in relatively "dust proof" cabinets characterized as type 9 or type 12 cabinets by the National Electrical Manufacturers Association. The standards of this Association are incorporated into Ordinance No. 69–839 of the Metropolitan Government of Nashville and Davidson County. There is evidence that the cabinets actually installed are not the type 12 or

type 9 which are for use in dusty environments but are type 1 which is for general purpose industrial use.

The electrical controls housed by the cabinets generate heat while operating, requiring some cooling system. The cooling system used in the subject cabinets was the installation of fans on the top of the cabinets which decreased the air pressure in the cabinet causing air from the cabinet's general environment to be drawn into the cabinet through filter panels near the bottom of the cabinets. There is evidence that dust could fall through the fans when they were not turning and could be drawn through the filters if the filters were not cleaned.

An alternative cooling system would be one in which clear outside air could be forced by fans through air ducts into the cabinets, resulting in higher air pressure inside the cabinets than in the plant and in the movement of air through filters or crevices in the cabinet from inside to outside. It appears either system would allow some dust into the cabinets.

The shot-peen machines have two electrical motors one using 440 volts and the other using 220 volts. The cabinets contain circuits for both voltages each carrying high amperages.

The defendants furnished detailed manuals of instructions with the machine and control cabinets. The instructions included directions to cut off all power before opening, directions for cleaning the door filters and a specific direction to vacuum clean a cabinet whenever visible dust appears upon the controls.

On the day of the injury plaintiff was performing tests inside the cabinet, trying to discover the cause of a blown fuse in the 220 volt circuit. He had turned off the 220 volt line but not the 440 volt line. Plaintiff was following the 220 volt line through the cabinet when there was a sudden explosion and fire. Plaintiff suffered severe burns for which he and his wife now seek to recover.

The primary dispute between the parties is the cause of the burns. Defendants maintain an electrical arc from the live 440 volt line was responsible. Plaintiffs contend a flash aluminum dust fire was the cause.

Engineering experts testified that in their opinion the burns were caused by a dust fire. These opinions were predicated on the assumption aluminum dust was present in the cabinets. There was testimony that aluminum dust was prevalent in the plant especially around the electrical control panel where Young was injured and one expert testified that he found aluminum dust on the top of the cabinet six years after the fire. Plaintiff Young also testified there was substantial deposits of dust on the electrical controls in the cabinet. One could reasonably infer this was, at least in part, aluminum dust.

A medical expert testified that Young's burns were not electrical burns but burns caused by the ignition of some flammable material.

There was also evidence regarding the type of smoke and flash caused by electrical arcs and dust fires, and conflicting theories of why certain combustible materials in the cabinet burned and others did not.

With this evidence in mind we now must determine whether under the standard of review described above a jury issue has been presented on each material element of the prima facie case and on each defense.

Plaintiffs assert two theories which we believe require essentially the same analysis. Plaintiffs contend that the defendants are strictly liable under Restatement (Second) of Torts § 402A because of the defective design of the product and, similarly, that the defendants are negligent in their design of the cabinets and machine of which the cabinets are a part. We believe these two counts present essentially the same theory. See Wade, On the Nature of Strict Tort Liability for Products, 44 Miss. L.J. 825 (1973).

Tennessee has adopted § 402A as a theory of liability for injuries inflicted by defective products. *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276 (Tenn.App.1977); *Elli-*

thorpe v. Ford Motor Co., 503 S.W.2d 516 (Tenn.1973); Olney v. Beaman Bottling Co., 220 Tenn. 459, 418 S.W.2d 430 (1967). Section 402A provides:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

 It is ordinarily a question for the trier of fact whether the product is in a defective condition unreasonably dangerous to the user. Wyatt v. Winnebago Industries, Inc., supra; Jackson v. Tennessee Valley Authority, 413 F.Supp. 1050 (D.C.Tenn. 1976); Ellithorpe v. Ford Motor Co., supra. Relevant to the determination of whether a product is defective and unreasonably dangerous is the presence or absence of a statement accompanying the product which in some way informs the user of the danger. Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825, 837 (1973). This statement must be "calculated to bring home to a reasonably prudent user of the product the nature and the extent of the danger involved in using the product." Trimble v. Irwin, 59 Tenn.App. 465, 441 S.W.2d 818 (1968).

 We believe it is clearly a question for the jury whether the cabinet and machine were unreasonably unsafe and wheth-er the instructions accompanying the machine were adequate to apprise the user of the danger. Reasonable minds could certainly conclude from the evidence that a warning could have been more plainly made, that an alternative more dust proof cabinet design could have been employed or that a different and more effective cooling and filtration system would have been appropriate.

 Of course the defective and unreasonably dangerous condition of the product must be the proximate cause of the plaintiff's injuries, a determination, again, ordinarily for the finder of fact. Wyatt v. Winnebago Industries, Inc., supra, and cases there cited.

 Here too we think a jury issue is presented. Reasonable minds could infer from the evidence that aluminum dust was present in the cabinet just before the fire occurred. Testimony indicated there was aluminum dust in the plant air near the cabinet, that the filteration system drew that plant air into the cabinet without filtering out all the aluminum dust, that dust which was later found on the top of the cabinet could also have fallen through the fans into the cabinet. Reasonable minds could further conclude from the expert testimony that the aluminum dust ignited while plaintiff was working inside the cabinet and seriously burned him. We do not say that the preponderance of the evidence supports these conclusions or that we ourselves would reach them but that reasonable minds could conclude from the evidence that the design was the cause in fact of these injuries.

We also think reasonable minds could conclude that this type of occurrence and this type of plaintiff were within the zone of foreseeable risk and thus the remaining requirement for a finding of proximate causation would be present. See Wyatt v. Winnebago Industries, Inc., supra.

Great emphasis is placed in the briefs and the trial court opinion on the evidence that plaintiff failed to turn off the 440 volt line before entering the cabinet, contrary to the

defendants' instructions, and that Avco, plaintiff's employer, failed to clean the filters or vacuum the cabinet also contrary to the defendants' instructions. Defendants contend and the trial court held that these derelictions were unforeseeable intervening causes which absolve them of any liability. Plaintiffs contend these were foreseeable intervening causes and so do not interrupt proximate causation. We believe these arguments miss the mark.

In our opinion the proper analysis is initially to determine whether the product is unreasonably dangerous, including within that determination a finding of the adequacy of the instructions or warning. Normally this determination is a question for the jury. If it is found that the product is not unreasonably dangerous then that is the end of the inquiry and defendants are not liable. If, on the other hand, the product is determined to be unreasonably unsafe then the failure of the plaintiff or his employer to heed the instructions or warning do not as a matter of proximate cause interrupt the defendants' liability, unless of course it may be said the plaintiff has assumed the risk. *Wyatt v. Winnebago Industries, Inc., supra; Ellithorpe v. Ford Motor Co., supra.* See, also, Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825 (1973). In order for the fact finder to determine that plaintiff assumed the risk he must find that plaintiff voluntarily and unreasonably encountered a known danger. *Wyatt v. Winnebago Industries, Inc., supra; Ellithorpe v. Ford Motor Co., supra.*

Of course, we do not by this holding rule out the possibility of an unforeseeable intervening cause or an unforeseeable misuse or abnormal use of the product absolving a defendant from liability. We hold only that it is improper to characterize failure to follow instructions or heed a warning as an intervening cause, misuse or even abnormal use because the test of foreseeability attaching to those characterizations would necessarily frustrate those defenses. It is clear that it is virtually always foreseeable that an adequate in-

struction or warning will not be followed. To forestall such user action or omission is precisely the purpose of the instructions or warning. It is equally clear however that a manufacturer is entitled to expect reasonable instructions or warnings to be heeded. *Reeves v. Power Tools, Inc.,* 474 F.2d 375 (6th Cir. 1973); *Mitchell v. Ford Motor Co.,* 533 F.2d 19 (1st Cir. 1976); Restatement Torts 2d § 402A comment (j) at 353 (1965).

We conclude for the reasons above stated that granting the motion for directed verdicts in behalf of defendants Reliance and Carborundum was error and therefore grant plaintiffs' first assignment of error.

## II.

The plaintiffs' second assignment of error calls into question the trial court's conditional granting of a new trial.

Under Rule 50.03 of the Tennessee Rules of Civil Procedure a trial court may grant a new trial conditioned on a reversal of the directed verdict. Here, the trial court grounded its conditional grant of a new trial on its opinion that the evidence preponderated against the jury verdict. Ordinarily if the directed verdict action is reversed then the cause will be remanded for a new trial. It is only in exceptional circumstances and when the interests of justice require it that the jury verdict will be reinstated. *Holmes v. Wilson,* 551 S.W.2d 682 (Tenn.1977).

We do not believe that this case presents exceptional circumstances nor that the interest of justice requires reinstating the jury verdict. A trial court has wide discretion to grant a new trial in his capacity of thirteenth juror. We cannot say the able trial court below overstepped the bounds of his discretion in concluding the evidence preponderated against the verdict and thus granting a new trial.

There being no other assignments of error we reverse the directed verdicts in favor of defendants Reliance and Carborundum and remand for a new trial in accordance with this opinion.

Reversed in part, affirmed in part and remanded.

SHRIVER, P. J., and LEWIS, J., concur.