Jo Ann WHITEHEAD and husband,
Johnny R. Whitehead,
Plaintiffs–Appellees,

v.

The DYCHO COMPANY, INC.; Buss
Coatings, Division of Buss Automation,
Inc.; Union Chemicals Division, Divi-
sion of Union Oil Company of Califor-
nia; and Exxon Corporation, Defen-
dants–Appellants.

Supreme Court of Tennessee,
at Knoxville.

July 31, 1989.

Brian H. Trammell, Kennerly Montgom-
ery & Finley, Knoxville, for defendant-ap-
pellant Dycho.

Jay Arthur Garrison, Taylor & Groover,
Knoxville, for defendant-appellant Buss.

Steven Lipsey, Stone & Hinds, Knoxville,
for defendant-appellant Union.

Louis C. Woolf, John A. McReynolds, Jr.,
W. Kyle Carpenter, Baker, Worthington,
Crossley, Stansberry & Woolf, Knoxville,
for defendant-appellant Exxon.

James C. Wright, Butler, Vines, Babb &
Threadgill, Knoxville, for plaintiffs-appel-
lees.

## OPINION

DROWOTA, Chief Justice.

The Plaintiffs, Jo Ann Whitehead and
her husband, Johnny R. Whitehead,
brought this products liability action
against multiple Defendants, seeking dam-
ages for Mrs. Whitehead's personal injuries
resulting from an explosion caused by a
chemical known as "naphtha."[1] She alleg-
es in her complaint that Defendants were
manufacturers or distributors of "naphtha"
to which she had access at work. The
complaint alleges that Defendants were lia-
ble to Plaintiffs on theories of strict liabili-
ty in tort, breach of warranty, and negli-

1. Naphtha is a generic term for a solvent for use only in an industrial setting as a result of its dangerous properties and propensities. Affida- vit of Robert Schmidt, head of the Finishing Laboratory for Magnavox.

gent failure to warn. The Trial Court granted the defendant's motion for summary judgment and dismissed plaintiff's suit. The Court of Appeals reversed and remanded for a trial on the merits.

Mrs. Whitehead's employer, North America Phillips Consumer Electronics Corporation (hereinafter "Magnavox") purchased naphtha from two distributors, the Defendants, The Dycho Company, Inc. (hereinafter "Dycho"), and Buss Coatings, Division of Buss Automation, Inc. (hereinafter "Buss"). Dycho purchased naphtha in bulk from Union Chemicals Division, Division of Union Oil Company of California (hereafter "Union") and Buss purchased chemicals from both Union and Exxon Corporation (hereinafter "Exxon").

In her complaint, Mrs. Whitehead alleges that on September 4, 1982, she was using a product manufactured or distributed by Defendants to clean a work garment when said product violently exploded resulting in serious injuries. She alleges that the products sold by Defendants were defective and unreasonably dangerous, were placed in the stream of commerce by Defendants, were used in an intended manner, and that each Defendant is strictly liable. Plaintiff also avers that Defendants sold their products under circumstances that an implied warranty of merchantability and fitness for a particular purpose attached and due to the defective and dangerous nature of the products, this warranty was breached. Alternatively, Plaintiff avers that Defendants were negligent in failing to properly warn of the dangerous propensities of their product and were negligent in failing to warn those ultimate consumers of the dangerous propensities of the product. Further, Defendants sold their products with warnings inadequate to give notice to persons such as the Plaintiff as to the conditions under which the product might be used safely. Plaintiff also filed a separate action against her employer, Magnavox, seeking workers' compensation benefits and, in the alternative, asserting a common law tort claim. The trial court ordered a bifurcated hearing with reference to the workers' compensation portion of the action on the issue of whether or not the Plaintiff was acting within the scope of her employment at the time she was injured. The trial court heard Plaintiff's workers' compensation claim and found it to be compensable and awarded Plaintiff maximum benefits against her employer, Magnavox. Plaintiff could thus no longer pursue her common law tort action against Magnavox.

The Defendants jointly filed a motion for summary judgment alleging that Plaintiff's use of the naphtha constituted an unforeseeable misuse of the product, therefore barring any recovery, that Plaintiff's act of taking the naphtha from her place of employment constituted an intervening and superseding intentional act which bars recovery; that the warnings given by Defendants were adequate under the Tennessee Products Liability Act in that they complied with all applicable state and federal regulations regarding labeling of the product; and that the Defendants' warnings were adequate as a matter of law because Plaintiff's employer, Magnavox, was a sophisticated, bulk purchaser of naphtha, and Defendants were entitled to rely upon the purchaser's expertise to warn the ultimate users of the product; that Defendants are shielded from any duty to Plaintiffs by the sale to Magnavox, a sophisticated purchaser.

The roles of the various Defendants in the chain of distribution will be instructive. There were two manufacturers, Exxon and Union, and two distributors, Dycho and Buss. Magnavox purchased the naphtha from Dycho and Buss. Neither Union nor Exxon sold any naphtha products directly to Magnavox.

Exxon sold a chemical, Varsol 18 to Buss. Varsol 18 is an Exxon trade name for mineral spirits. This product was sold and delivered in bulk to Buss. "Flammable" or "Combustible" placards accompanied and were attached to the bulk shipments pursuant to the regulations of the U.S. Department of Transportation. Exxon provided Buss with Material Safety Data Sheets which state that Varsol 18 is a combustible liquid, not to be handled or stored near heat, sparks, flame, or strong oxidants. Exxon did not sell any other

product or chemical which was used by Buss to produce its naphtha product. Exxon had no knowledge of the use made of its mineral spirits by Buss.

Union sold Lactol Spirits to Buss which Buss blended with the Varsol 18 purchased from Exxon to formulate naphtha. The naphtha was then sold by Buss to Magnavox. Union sold naphtha to Dycho, which then sold it to Magnavox. The sales from Union to Buss and Dycho were either in bulk by transport trucks or in 55 gallon drums. If the chemical was delivered by transport truck, such truck was placarded as either "Flammable" or "Combustible" in accordance with the regulations of the Department of Transportation. If the chemical was transported in 55 gallon drums, a warning label was attached to each drum. The warning labels reflected that the chemicals were combustible and/or flammable, and stated that the chemicals should be kept away from heat, sparks and flame. The labels further stated that the chemicals are "for industrial use only." Union also delivered Material Safety Data Sheets for the products to Buss and Dycho. Additionally, each shipment of naphtha was accompanied with a bill of lading which described the product as either "flammable" or "combustible." Union was not aware of the use made by Magnavox of naphtha.

Buss, one of the two distributors of naphtha to Magnavox, would blend ten gallons of Exxon's Varsol 18 with 45 gallons of Lactol Spirits purchased from Union to produce naphtha which it sold to Magnavox. This blending and mixing process was a process developed entirely by Buss. The specifications for the naphtha products purchased by Magnavox were written by Magnavox employees. These employees were aware that the naphtha products were highly flammable and should not be used or exposed to heat, flame, fire or sparks due to the possibility of explosion and fire.

Dycho purchased naphtha in bulk from Union and transferred it into 55 gallon metal drums and then resold it to Magnavox. The product name was stenciled on the top and sides of the drums along with a hazardous flammable label. All shipping papers stated that naphtha is a flammable liquid. Dycho did not do any blending, only repackaging the naphtha it purchased exclusively from Union.

The 55 gallon drums containing the naphtha were stored by Magnavox in an outside location separate and apart from its production buildings. The naphtha was from time to time transferred into smaller containers by line supervisors or group leaders, who in turn took the naphtha to the production line where it was supplied to the assembly-line workers in small, pump-type containers with no label or warnings thereon of any type. The use of naphtha was strictly regulated by Magnavox.

Magnavox, Plaintiff's employer, manufactures and assembles various types of electrical products, such as television sets and stereo sound systems in its plant in Jefferson County. Plaintiff was employed by Magnavox as an assembly-line worker. Her job involved the operation of a mastic glue machine used to apply glue to component parts of television and stereo cabinets in preparation for further assembly. In order to remove the excess glue from the cabinets being assembled, Magnavox supplied Plaintiff and other assembly-line workers with the solvent naphtha. The employees were instructed to place some naphtha from a small container furnished to them by Magnavox on a rag and wipe off any excess glue. From time to time, the employees at Magnavox would get glue on their hands, clothes and work aprons. Because of the difficulty in removing the glue, employees used naphtha at the workplace to remove it.

It had been the policy of Magnavox to provide clean aprons weekly. However, sometime before the accident involving Plaintiff, this policy was discontinued, and the line employees were given the privilege of taking the aprons home to wash. There was testimony in the record to the effect that prior to the accident, Plaintiff had tried to clean the glue off her apron with a type of thinner but it did not work, and that naphtha was the only effective product known to her for removing the glue.

One of Plaintiff's co-workers testified that a line supervisor told the Plaintiff to take her apron home and wash it. This same fellow employee also testified that they had not been informed by Magnavox that naphtha was explosive.

Plaintiff took home a quantity of naphtha in a Coke can several days before the accident. On Saturday morning, September 4, 1982, Plaintiff was severely injured in an explosion in the laundry room of her home. The Plaintiff theorizes that Mrs. Whitehead had poured a quantity of naphtha into her washing machine, that the naphtha vaporized, and that the resulting gas was somehow ignited, causing the explosion. As a result of the explosion, Plaintiff was rendered totally and permanently disabled. She suffered severe brain damage and is no longer able to speak.

The trial court granted summary judgment for all Defendants, finding that the Defendants owed no duty to warn the Plaintiff with respect to the dangers of naphtha because Magnavox was "a skilled, sophisticated, industrial purchaser in bulk from the defendants" and secondly, "Magnavox was a learned intermediary and the defendants could reasonably rely upon Magnavox to warn its employees of the dangers of naphtha and to instruct them in its use." The trial court also found that Plaintiff's "use of the product was unforeseeable as a matter of law."

The Court of Appeals reversed and remanded for a trial on the merits. In discussing the Defendants' duty to warn and the exceptions thereto, the Court of Appeals states:

> In a product liability case, a plaintiff may plead a claim of negligence on the part of the manufacturer in failing to warn of the dangers associated with a particular product, or plaintiff may claim strict liability on the part of the defendant for any injury sustained as a result of the same failure, or he may do both. *See Russell v. G.A.F. Corp.*, 422 A.2d 989, 991 (D.C.1980). In the present case, plaintiff has alleged both negligence and strict liability as a basis for recovery. As stated in *Payne v. Soft Sheen Prod-*

*ucts, Inc.*, 486 A.2d 712 (D.C.1985): "In either case, the manufacturer's duty is the same: if its product 'could result in foreseeable harm [the manufacturer] has a duty to give a warning which adequately advises the user of attendant risks and which provides *specific* directions for safe use.'" *Id.* at 721 (quoting *Russell*, 422 A.2d at 991).

When the adequacy of such a warning is to be judged, whether under strict liability, negligence or breach of warranty, the standard of reasonable care is to be applied. *See Trimble v. Irwin*, 59 Tenn. App. 465, 441 S.W.2d 818 (1968); *Young v. Reliance Electric Co.*, 584 S.W.2d 663 (Tenn.App.1979); Restatement (Second) of Torts § 402, Comment (j). Strict liability under § 402(a) was adopted by our Supreme Court in *Ford Motor Co. v. Eads*, 224 Tenn. 473, 457 S.W.2d 28 (1970). *See also* T.C.A. § 29–28–102(6) (1980).

A cause of action based upon negligence for failure to warn a consumer of a product's danger is set forth in Section 388 of the Restatement (Second) of Torts § 388 (1965). That section provides:

"§ 388. **Chattel known to be dangerous for Intended Use**

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

As will be observed hereafter, some jurisdictions have adopted exceptions to this

rule—namely what has come to be known as the "sophisticated user" exception to § 388(b) and the "learned intermediary" exception to § 388(c)....

The trial court found plaintiff's employer to be both a sophisticated user and a learned intermediary....

The two exceptions we are now considering come into play after the determination of the existence of an underlying duty on the part of a supplier or manufacturer to warn....

[W]e hold as a matter of law that even if the sophisticated user exception had previously been declared to be the law of this state, it was error to apply it to Magnavox, and it should not have been applied to the plaintiff. In so ruling, we neither adopt nor reject the sophisticated user exception in Tennessee....

It was and is the defendants' contention that Magnavox was a learned intermediary, knowledgeable of and acquainted with the dangerous propensities of naphtha so that when naphtha was sold by them in bulk to an employer familiar with the risks attendant thereto and which totally controlled its use, their duty to warn was limited as a matter of law to the learned or informed intermediary (Magnavox) and not to any employee of Magnavox. Restatement (Second) of Torts § 388 (Comment n) (1965).

Comment (n) to § 388(c) of the Restatement, provides for such an exception. It reads in part as follows:

"Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it.... [I]t is obviously impossible to state in advance any set of rules which will automatically determine in all cases whether one supplying a chattel for the use of others through a third person has satisfied his duty to those who are to use the chattel by informing the third person of the dangerous character of the chattel, or of the precautions which must be exercised in using it in order to make its use safe.

. . . .

Here, as in every case which involves the determination of the precautions which must be taken to satisfy the requirements of reasonable care, the magnitude of the risk involved must be compared with the burden which would be imposed by requiring them (see § 291), and the magnitude of the risk is determined not only by the chance that some harm may result but also the serious or trivial character of the harm which is likely to result (*see* § 293). Since the care which must be taken always increases with the danger involved, it may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them and those in the vicinity of their use, to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character.

Thus, while it may be proper to permit a supplier to assume that one through whom he supplies a chattel which is only slightly dangerous will communicate the information given him to those who are to use it unless he knows that the other is careless, it may be improper to permit him to trust the conveyance of the necessary information of the actual character of a highly dangerous article to a third person of whose character he knows nothing. It may well be that he should take the risk that this information may not be communicated.... [I]f the danger involved in the ignorant use of a particular chattel is very great, it may be that the supplier does not exercise reasonable care in entrusting the communication of the necessary information even to a person whom he has good reason to believe to be careful. Many such articles can be made to carry their own message to the understanding of those who are

likely to use them by the form in which they are put out, by the container in which they are supplied, or by a label or other device, indicating with a substantial sufficiency their dangerous character. Where the danger involved in the ignorant use of their true quality is great and such means of disclosure are practicable and not unduly burdensome, it may well be that the supplier should be required to adopt them."

In granting summary judgment for defendants, the trial court found as a matter of law: (a) the warnings provided Magnavox by the defendants were adequate warnings; and (b) because of the knowledgeable status of Magnavox, defendants were excused from giving any warning to the ultimate users, Magnavox employees....

[W]e are of the opinion that the trial court erred when it found Magnavox to be a learned intermediary and in holding as a matter of law that defendants were excused from a further duty to warn plaintiff as well as other employees of Magnavox. While we do not reject the application of the learned intermediary exception to the employer-employee relationship, by the same token, we do not adopt it. Plaintiff is entitled to a jury trial as to the adequacy of warnings given and whether or not defendants' duty to give warnings extended beyond Magnavox to her.

We are of the opinion that the trial court was correct in granting summary judgment for the Defendants, but for different reasons. In ruling on motions for summary judgment, both the trial court and appellate courts must consider the matter in the same manner as a motion for a directed verdict at the close of plaintiff's proof. We must view the pleadings and the evidence in the light most favorable to the opponent of the motion, and all legitimate conclusions of fact therefrom must be drawn in favor of the opponent. If, after so doing, a disputed issue of material fact is found to exist, the motion must be denied. *Jones v. Home Indem. Ins. Co.*, 651 S.W.2d 213 (Tenn.1983); *Stone v. Hinds*, 541 S.W.2d 598, 600 (Tenn.App.1976); Rule 56, T.R. C.P.

In *Adams v. Union Carbide Corp.*, 737 F.2d 1453 (6th Cir.1984), the trial court granted summary judgment for the manufacturer. The Sixth Circuit Court of Appeals held "while § 388 defines a manufacturer's duty to warn those who may ultimately be exposed to its product, comment n to the Restatement also explains that the duty can be discharged by the manufacturer's reasonable reliance on a third party—in this case GMC—to convey the information supplied by the manufacturer to the ultimate user—in this case employees such as Betty Adams." The Court went on to hold, in affirming the trial court, that "it was reasonable for Union Carbide to rely upon GMC to convey the information about the hazardous propensities of [the chemical] TDI to its employees within the context of comment n of the Restatement." 737 F.2d at 1457.

The record clearly supports a finding that Defendants provided adequate warning to Magnavox. Material Safety Data Sheets were provided by Union and Exxon and were supplied to the distributors Buss and Dycho who supplied the same to Magnavox. Labeling and warning labels were on the 55 gallon drums when they were delivered to Magnavox indicating the product was "flammable" and "for industrial use only." Magnavox wrote its own specifications for the naphtha products purchased from Dycho and Buss. Magnavox clearly knew and was knowledgeable of the dangers and propensities of naphtha to heat, flame, or sparks because of the possibility of explosion and fire. It was, therefore, reasonable for the Defendants to rely upon Magnavox to convey the information about the hazards of naphtha to its employees within the context of comment n of the Restatement, discussed heretofore.

In *Reeves v. Power Tools, Inc.*, 474 F.2d 375 (6th Cir.1973), the trial court found that when the manufacturer delivered to the supplier the printed instructions (warnings), it had a right to expect the warnings to be passed along to the ultimate user.

The trial court granted a directed verdict for the manufacturer. The Sixth Circuit Court of Appeals held that the manufacturer "adequately discharged its duty to warn of the dangerous nature of the tool by distributing printed instructions complete with diagrams and illustrations with each new tool that it sold or delivered." 474 F.2d at 379. The supplier never delivered to plaintiff Reeves the printed safety rules prepared by the manufacturer. The Court of Appeals held "Power Tools, as supplier of the tool to appellant's [plaintiff's] employer had a duty at least to pass on the warning of danger it had received from the manufacturer. 2 Restatement (Second) Torts, § 388 (1965); *Trimble v. Irwin*, 59 Tenn.App. 465, 441 S.W.2d 818, 822 (1968)." 474 F.2d at 380. In *Trimble v. Irwin, Id.*, Judge Cooper, speaking for the Court of Appeals found no error in the trial court's directing a verdict for the defendant manufacturer. The Court found no negligence on the part of the manufacturer who had given the purchaser adequate warning that the floor-sealer was highly volatile and combustible. The Court further held that the liability between the purchaser of the floor-sealer and the injured third party was a question for the jury. In the case at bar, the Defendants had a right to expect the warnings which it had given to Magnavox to be passed along to the ultimate users.

■ We are of the opinion that the independent intervening act of Magnavox in placing naphtha in small, pump-type containers with no label and failing to warn its employees of the dangerous nature of the product was the proximate cause of the accident. *See Ford Motor Company v. Wagoner*, 183 Tenn. 392, 192 S.W.2d 840 (1946). In *Ford Motor Company*, the Supreme Court reversed the Court of Appeals and affirmed the trial court's granting of a directed verdict for the manufacturer. The Court, in citing Beven on Negligence, states: "A person [Magnavox] who knowing the perilous character of a compound which he has bought yet hands on the compound to a third person [Plaintiff] destroys, by his negligent act, the causal connection between the first person con-

cerned and the ultimate injury sustained." 183 Tenn. at 397, 398, 192 S.W.2d at 842.

The Defendants could not have reasonably anticipated the actions and conduct of Magnavox. *Ford Motor Company v. Wagoner*, 183 Tenn. at 399, 192 S.W.2d at 843. The Court in *Ford Motor Company* concludes by citing what it finds to be the pertinent rule as "one of continuing liability of the manufacturer to successive purchasers, subject to be destroyed, however, by the intervening act of an agency which is (1) independent, (2) efficient, (3) conscious, and (4) not reasonably to have been anticipated." 183 Tenn. at 401, 192 S.W.2d at 844. Magnavox meets the four criteria of the rule and we find the causal connection was broken by the independent intervening acts of Magnavox in failing to place warnings on containers for use by its employees and in failing to warn Plaintiff of the dangerous propensities of naphtha.

What then was the proximate cause of Plaintiff's injuries? To satisfy her burden of proving proximate causation, Mrs. Whitehead was required to establish, at a minimum, that she would not have sustained her injuries had Defendants provided proper warnings. There is no evidence presented from which reasonable minds could conclude that Plaintiff's injuries were proximately caused by the failure to warn on the part of Defendants.

In a case very similar on its facts, *Hargis v. Doe*, 3 Ohio App.3d 36, 443 N.E.2d 1008 (1981), the court asked the question: "How could an adequate and complete warning on the drums have prevented the unfortunate accident? According to the evidence, the supplier had no other reasonable access to the employee, and it appears that the accident would have occurred without any reference whatsoever to Tresler's failure to post a warning on the drums." 443 N.E.2d at 1011. In *Hargis*, a directed verdict was entered in favor of the Defendant, Tresler Oil Company, at the conclusion of Plaintiff Hargis' case. Hargis was employed by Mamco who had purchased a solvent from Tresler Oil Company in 55 gallon drums which did not display a warning that the solvent was flammable. Plaintiff testified

that no one ever told him about the flammable propensities of the solvent, that he never saw Tresler's 55 gallon drums, and that he only knew that the solution in the vat was some type of liquid. The solvent came into contact with Hargis' clothes and when Hargis began to use an arc welder his clothing caught on fire and he was injured. The Ohio court held: "One of the hurdles, which is present in all products liability litigation, standing between proof of a negligent failure to warn and ultimate recovery, is the necessity of proof of a proximately causal relationship between the negligence and the injury." 443 N.E.2d at 1011. The court went on to hold that "the requirement of an adequate warning extends only to those to whom the distributor had reasonable access." The court then held: "We are of the opinion, therefore, that the totally unanticipated misuse of the solvent, as found by the trial court, was not enough to preclude the necessity for some warning that this particular product was flammable, but after construing the evidence most favorable to the plaintiff, as we must in a directed verdict case, we are nonetheless of the opinion that the evidence fails to show any causal connection in this particular case between the failure to warn and the injuries." 443 N.E.2d at 1011.

In the case at bar, Plaintiff, like Hargis, never saw the 55 gallon drums, although these drums did have warning labels unlike those in *Hargis.* The employees of Magnavox were prohibited from the area where the drums of naphtha were stored. Had there been inadequate warnings by Defendants, that would not have been the proximate cause of this accident. All the warnings in the world would not have prevented this unfortunate accident insofar as the Defendants are concerned. Even assuming the facts in a light most favorable to the Plaintiff, they have failed to establish a causal connection between the alleged negligence and the injury.

Magnavox was knowledgeable about the product in question and it was the only party in a position to issue an effective warning to the Plaintiff. The Defendants had no reasonable access to Plaintiff. For the reasons heretofore stated, we are of the opinion that the judgment of the Court of Appeals should be reversed and that of the trial court affirmed. Plaintiffs' cause is accordingly dismissed. The costs of this appeal shall be taxed to Appellees.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.