**ARCH TRIMS, INC. and Archie J. Watson, Plaintiffs,**

v.

**W.W. GRAINGER, INC. and Emerson Electric Company, Defendants.**

**No. 1:93–cv–284.**

United States District Court,
E.D. Tennessee,
at Chattanooga.

Nov. 18, 1994.

Phillip M. Durrence, Jr., Hall, Haynes, Lusk & Foster, Chattanooga, TN, Hunter C. Quick, Cozen & O'Connor, Charlotte, NC, and Michael A. McKenzie, McKenzie, Martin, Taylor & McConnaughey, Atlanta, GA, for plaintiffs.

David L. Franklin, Luther, Anderson, Cleary & Ruth, Chattanooga, TN, for Grainger.

Charles W. Dooley, Michael K. Alston, and C. Douglas Dooley, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Chattanooga, TN, for Emerson.

## MEMORANDUM

EDGAR, District Judge.

This case is before the Court on the motions of defendants Emerson Electric Company (Court File No. 40) and W.W. Grainger, Inc. (Court File No. 44) for summary judgment.

### I. Facts

As is required when ruling on a motion for summary judgment, the Court has reviewed the facts and all the inferences to be drawn from them in the light most favorable to the plaintiffs. *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir.1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Plaintiff Arch Trims, Inc. ("Arch Trims") manufactures textiles in Spring City, Tennessee. Plaintiff Archie Watson ("Watson") is the president of Arch Trims. In the 1980's, Arch Trims began to manufacture fleece (which can be found on the inside of sweat-shirts). The fleece was manufactured in the "loom room." The production of fleece created lint that had to be removed from the loom room.

Watson decided to remove the lint by sucking it out of the loom room into a "lint room" using an exhaust fan. The lint collected in the lint room was then periodically removed. Watson knew that he needed a fan driven by a "closed" electric motor, as opposed to a fan driven by an "open" or "drip-proof" motor. A closed motor is enclosed by a solid metal casing. An open motor contains vents in its casing which are open to the atmosphere. Watson knew that the closed fan motor should be used where there is exposure to air contamination such as lint, and that an "open" motor would be a fire hazard. This is why in June 1986 Watson ordered a closed motor from defendant W.W. Grainger, Inc. ("Grainger"), a company which wholesales industrial goods such as fans. Watson installed this enclosed fan motor which has been referred to in this litigation as the "east fan." Defendant Emerson Electric Company ("Emerson") manufactured the fan motor.

Several months later, as fleece production increased, Watson decided to install a second fan. He therefore ordered an identical closed fan motor from Grainger. This second fan was not installed by Watson himself, but by Tom Sitzlar ("Sitzlar"), a general maintenance mechanic employed by Arch Trims.

Taking the facts most favorably to the plaintiffs, this second fan motor shipped by Grainger to the plaintiffs was not a closed motor, but an open motor. Sitzlar, who did not know the difference between the two kinds of motors, installed it at Watson's request. This second fan and motor became known as the "west fan." The west fan also drew lint from the loom room into the lint room. Lint found its way into the open motor of the west fan and caused it to ignite the fire which did considerable damage to Arch Trims' buildings. Watson had an ownership interest in the buildings.

Plaintiffs claims against defendants Grainger and Emerson are that (1) they were negligent in shipping a fan motor different from that ordered by Watson; and (2) they

**475**

failed to warn the plaintiffs of the hazards posed by the open motor in a dirty environment, and are therefore liable to the plaintiffs on products liability theories of negligence, breach of implied warranty of merchantability and strict liability.

## II.  Failure to Warn

Plaintiffs base their products liability allegations on the contention that the defendants failed to warn the plaintiffs of the hazard posed by the open fan motor.  Plaintiffs say that such a warning should have been affixed to the motor so as to prevent someone like Mr. Sitzlar from installing it in an unsafe location.

A person with actual knowledge of a product's hazard is not entitled to a warning of it.  *Davis v. Avondale Industries, Inc.,* 975 F.2d 169, 172 (5th Cir.1992) (applying Louisiana law); *Horak v. Pullman, Inc.,* 764 F.2d 1092, 1097 (5th Cir.1985) (applying Texas law); *Strong v. E.I. DuPont de Nemours Co.,* 667 F.2d 682, 688 (8th Cir.1981) (applying Nebraska law); *Wisconsin Elec. Power Co. v. Zallea Bros., Inc.,* 606 F.2d 697, 704 (7th Cir.1979) (applying Wisconsin law); *Sowles v. Urschel Laboratories, Inc.,* 595 F.2d 1361, 1365 (8th Cir.1979) (applying Minnesota law); *In re New York Asbestos Litigation,* 847 F.Supp. 1086, 1106 (S.D.N.Y. 1994) (applying New York law); *see* 2 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 12.11 (1994) (collecting cases), and 63 Am.Jur.2d *Products Liability* § 341 (2d ed. 1984) (collecting cases).  The rationale for this rule is that proximate cause cannot exist when the product's user knows of the hazard.  *In re New York Asbestos Litigation,* 847 F.Supp. at 1106.  The user must act in accordance with his knowledge. If he does not, he, not the product's manufacturer or supplier, suffers the consequences. In such a case, any failure to warn cannot be the procuring cause of any resulting mishap.

While Tennessee courts have not yet enunciated this precise legal proposition, it is clear that given the opportunity, they would. Tenn.Code Ann. § 29–28–105(d) (1980), a part of the Tennessee Products Liability Act of 1978, provides: "A product is not unreasonably dangerous because of failure to adequately warn of a danger or hazard that is apparent to the ordinary user."  Citing this statute, the Tennessee Supreme Court in *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984), held that someone who died from drinking grain alcohol had no cause of action against the manufacturer or seller on a failure to warn theory because the dangers posed by consuming excessive amounts of that substance are common knowledge.  *Id.* at 693.  *See also Curtis v. Universal Match Corp.,* 778 F.Supp. 1421, 1425–27 (E.D.Tenn.1991), *aff'd,* 966 F.2d 1451 (6th Cir.1992) (table), in which this Court considered § 29–28–105(d) in holding that the manufacturer of a lighter could not be held liable for failing to adequately warn the plaintiffs, whose three year-old son set fire to his two year-old brother's diaper, when the plaintiffs admitted they knew of the dangers of allowing unsupervised children to play with lighters.

The users of the fan motor were Arch Trims and Watson.  They, not Mr. Sitzlar, were the parties damaged by the fire.  The hazard presented by installing an open fan motor in a lint-contaminated atmosphere was apparent to them.  There is no principled reason that a different result should be reached under Tenn.Code Ann. § 29–28–105(d) where a product's hazard is recognized by an *actual* user as opposed to an *ordinary* user.  Under Tennessee law, a manufacturer or seller of a product cannot be liable on a failure to warn theory where the product's danger or hazard is apparent to the actual, as well as the ordinary, user.  Therefore, under the facts of this case, considered most favorably to the plaintiffs, the plaintiffs' allegations that they have been damaged by the defendants' failure to warn must be **DISMISSED**.

The parties have expended considerable effort briefing cases such as *Whitehead v. Dycho Co.,* 775 S.W.2d 593 (Tenn.1989), and *Byrd v. Brush Wellman, Inc.,* 753 F.Supp. 1403 (E.D.Tenn.1990).  Those cases differ from this case in that they demonstrate that where an adequate warning is given to an employer which purchases a product, and an employee is injured by the product, the actions of the purchaser/employer can be an

independent intervening cause of injury to the employee thereby absolving the manufacturer/seller of liability. However, a proximate cause analysis similar to that used in those cases is employed in this case to preclude recovery by a knowledgeable user who is also the injured party.

### III. Negligence—Shipment of the Wrong Fan

Plaintiffs also allege that they were damaged because Grainger and Emerson negligently shipped them an open "drip proof" fan motor instead of the closed motor that the plaintiffs ordered.

Both kinds of motors were manufactured by Emerson in Anamosa, Iowa. There is some evidence that on "a couple of occasions" in the early 1980's, fan motors were found by Emerson to have been packaged at its plant in the wrong box. There is no evidence, however, that any fan motor ever left Emerson's manufacturing plant packaged in the wrong box. The motor in question would have been shipped by Emerson to Grainger. There is no evidence that Grainger ever received a mis-packaged fan motor from Emerson.

The standard for summary judgment mirrors the standard for directed verdict. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). There is not sufficient evidence to warrant submission of this case to a jury as to defendant Emerson on the theory that Emerson is responsible for the plaintiff's receiving the wrong fan motor. Therefore, summary judgment will be granted on this as well as the failure to warn claim as to Emerson.

Taking the facts most favorable to the plaintiffs, there is evidence that Grainger shipped the wrong fan to the plaintiffs. This issue will have to be resolved in accordance with Tennessee's current law of comparative negligence initiated by *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn.1992). Thus, inso-far as Grainger seeks summary judgment on this issue, its motion will be **DENIED.**

An appropriate order will enter.

### *ORDER*

For the reasons expressed by the Court in its memorandum filed herewith, it is **ORDERED** that:

(1) The motion of Emerson Electric Company for summary judgment (Court File No. 40) is **GRANTED.** All claims against Emerson Electric Company are **DISMISSED WITH PREJUDICE.**

(2) The motion of W.W. Grainger, Inc. for summary judgment (Court File No. 44) is **GRANTED IN PART and DENIED IN PART.** The motion is **GRANTED** as to any claim made by plaintiffs that Grainger failed to warn plaintiffs. All claims based on this allegation are **DISMISSED WITH PREJUDICE.** However, the motion is **DENIED** as to the claim that Grainger negligently failed to ship plaintiffs the fan motor which plaintiffs ordered. The case remains for trial as scheduled on that issue only.

SO ORDERED.