# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**July 27, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

BOBBY RAY SEARS,                    )
                                    )
        Plaintiff/Appellant,        )
                                    )    Davidson Circuit
VS.                                 )    No. 95C-1570
                                    )
METROPOLITAN NASHVILLE              )    Appeal No.
AIRPORT AUTHORITY and               )    01A01-9703-CV-00138
REPUBLIC PARKING SYSTEMS,           )
INC.,                               )
                                    )
        Defendants/Appellees.       )


APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE THOMAS W. BROTHERS, JUDGE


For Bobby Ray Sears:                For Metropolitan Nashville
                                    Airport Authority:

Mike W. Binkley
Nashville, Tennessee                D. Kirk Shaffer
                                    Nancy A. Vincent
                                    Stokes & Bartholomew
                                    Nashville, Tennessee


                                    For Republic Parking Systems, Inc.:

                                    Gerald C. Wigger
                                    Nashville, Tennessee


## VACATED AND REMANDED


                                    WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a motorcycle rider who was injured by the descending wooden arm of a traffic control device at an exit from the short term parking area of the Nashville International Airport. The motorcyclist filed suit in the Circuit Court for Davidson County against the Metropolitan Airport Authority and the operator of the airport parking facilities, alleging that they had failed to adequately warn him of the potentially dangerous condition at the exit. The trial court granted the defendants' motions for summary judgment, and the rider appealed. We have determined that the defendants are not entitled to a judgment as a matter of law based on this record and, therefore, vacate the summary judgment order and remand the case for further proceedings.

## I.

Bobby Ray Sears is a sixty-year-old heating and air conditioning technician who has worked for the Metropolitan Government for thirty years.[1] He lives in Nashville with his wife, his step-daughter, and his wife's mother. Mr. Sears has been riding motorcycles for pleasure since 1979 and, at the time of his injuries, owned a 1984 full size Honda motorcycle.

On May 21, 1994, Mr. Sears drove his motorcycle to the Nashville International Airport to meet his step-daughter who was returning from a visit to New Jersey. His wife drove to the airport separately in order to give her daughter a ride home. Upon arriving at the airport, Mr. Sears began looking for an appropriate place to park his motorcycle. Because he was not an habitué of the airport,[2] he followed the signs stating "Passenger Pick-up Use Short Term Parking." Accordingly, Mr. Sears entered the covered short term parking garage through its designated entrance and parked his motorcycle in a space normally used by automobiles.

After greeting his step-daughter and wife in the baggage claim area, Mr. Sears returned to the short term parking garage, got on his motorcycle, and proceeded to

---

[1]Most of the material facts in this case are undisputed. Accordingly, since the trial court granted summary judgment, our recitation of the facts is based on the view of the evidence that is most favorable to Mr. Sears. *See Robinson v. Omer*, 952 S.W.2d 423, 424-25 (Tenn. 1997).

[2]In fact, the last time Mr. Sears had been at the airport was 1986.

leave the airport. He followed the posted signs as he left the parking lot.[3] These signs led him to an exit controlled by a traffic control device that maintained the rate at which visitors left the short term parking area. This device consists of a bright yellow mechanical stanchion to which a wooden arm painted with diagonal black and white stripes was attached. When the wooden arm is at rest, it is parallel to the ground and blocks the exit from the short term parking area.[4] As vehicles approach, the stanchion automatically raises the arm long enough for one vehicle to pass. The stanchion is on the curb to the left of the visitors leaving the short term parking lot. A sign on the side of the stanchion facing the persons leaving the parking lot states:

```
CAUTION
AUTOS ONLY
NO
MOTORCYCLES,
BICYCLES
OR
PEDESTRIANS
```

This sign is, however, largely obscured from the view of persons leaving the parking lot by a large, yellow cylindrical post anchored in the concrete in front of the mechanical stanchion in order to protect the stanchion from damage by passing vehicles.

Several vehicles were ahead of Mr. Sears as he approached the exit. Accordingly, he stopped and waited while they exited through the traffic control device. Mr. Sears saw the mechanical arm rise for the vehicle immediately in front of him and then descend to its original position after the vehicle left. His view of the mechanical stanchion and the sign was blocked first by the vehicle in front of him and then by the yellow protective post. Mr. Sears slowly approached the mechanical arm and paused to give it time to rise. When the arm moved up, he began to drive through the exit. Before he could drive through, the arm came back down, driving the motorcycle's windshield into his face and dragging him off his motorcycle. Mr. Sears landed in a nearby flowerbed with the motorcycle on top of him. A visitor in a vehicle behind Mr. Sears assisted in righting the motorcycle and in summoning

---

[3]Mr. Sears explained: "I don't know anything about out there, you know. I was just – all I did was follow signs."

[4]Concrete curbs on each side of the exit prevent visitors from circumventing the traffic control device.

airport security personnel who prepared a report of the incident. Even though Mr. Sears was shaken by his fall, he drove his motorcycle home. Later, he was treated at an emergency room for a cut lip and injuries to his right knee and neck.

On May 16, 1995, Mr. Sears filed a Governmental Tort Liability Act suit in the Circuit Court for Davidson County against the Metropolitan Nashville Airport Authority ("Airport Authority") and Republic Parking System, Inc. ("Republic Parking").[5] He characterized the mechanical stanchion and wooden control arm as "a hidden or concealed peril." He also alleged that both the Airport Authority and Republic Parking had failed to warn motorcyclists of the potential danger of the exit gate and that they had failed to properly maintain the existing warning signs. He also asserted that the Airport Authority's and Republic's negligence had created a "dangerous condition at the exit area."

Both the Airport Authority and Republic Parking denied liability. In July 1996, they moved for summary judgment on the grounds (1) that they were immune from suit under the Governmental Tort Liability Act because they did not have actual or constructive notice of the alleged "dangerous condition at the exit area" and (2) that the condition and operation of the traffic control device was open and obvious and that Mr. Sears had been inattentive for failing to read the warning signs posted both at the entrance and exit of the short term parking area. The trial court granted both motions for summary judgment. It found as a matter of law (1) that the traffic control device was not a defective, unsafe, or dangerous condition, (2) that the Airport Authority had no notice of the condition, (3) that the Airport Authority and Republic Parking owed no duty to Mr. Sears because the condition and operation of the traffic control device were open and obvious, and (4) that the obstruction or misplacement of the warning signs could not have caused Mr. Sears' injuries because he admitted that he did not look at the signs. Mr. Sears has appealed from the trial court's decision.

## II.

_____

[5]Republic Parking's relationship to this dispute and to the Airport Authority cannot be reliably determined from this record. Mr. Sears' complaint alleges, and Republic Parking's answer admits, only that Republic Parking "was transacting business in Nashville, Davidson County, Tennessee on or about May 21, 1994." For the purpose of this appeal, we are assuming that Republic Parking was operating or managing the parking facilities at the airport, under either license or contract, and thus was an agent of the Airport Authority. However, Republic Parking's posture in the case remains to be proved with competent evidence.

We begin with the well-settled standards governing appellate review of summary judgments. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *See Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Tomlinson v. Kelley*, 969 S.W.2d 402, 405 (Tenn. Ct. App. 1997). They are not, however, appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). A summary judgment should not be granted if any reasonable doubt exists with regard to the conclusions to be drawn from the evidence. *See Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538 (Tenn. 1998).

Unlike other dispositions by a trial court without a jury, a summary judgment does not enjoy a presumption of correctness on appeal. *See Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn. 1997); *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). Accordingly, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the nonmoving party, and we must resolve all inferences in the nonmoving party's favor. *See Terry v. Niblack*, 979 S.W.2d 583, 585 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d at 426. When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *See Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

**III.**

Even before the enactment of the Tennessee Governmental Tort Liability Act in 1973,[6] local governmental entities had a duty to use reasonable care to keep their streets, sidewalks, and other public improvements safe for their reasonably foreseeable uses by members of the public. *See City of Winchester v. Finchum*, 201 Tenn. 604, 609, 301 S.W.2d 341, 343 (1957); *Flannagan v. Lee*, 56 Tenn. App. 600, 603, 409 S.W.2d 385, 387 (1966). Because the duty to maintain streets and sidewalks in reasonably safe condition was viewed as a proprietary, as opposed to a governmental, function, *see Shepherd v. City of Chattanooga*, 168 Tenn. 153, 155, 76 S.W.2d 322, 323 (1934), the courts repeatedly held that local governmental entities could be held liable for the damages caused by their negligent failure to maintain their streets and sidewalks in reasonably safe condition. Thus, the liability of local governmental entities for injuries occurring on sidewalks or streets or in other public improvements was governed by the same principles that governed the liability of private individuals. *See Johnson v. City of Jackson*, 194 Tenn. 20, 22, 250 S.W.2d 1, 2 (1952) (holding that the tort liability of a municipality acting in its proprietary capacity is the same as the tort liability of an individual).

The Tennessee Governmental Tort Liability Act eliminated the distinction between governmental and proprietary functions, *see Fretwell v. Chaffin*, 652 S.W.2d 755, 756 (Tenn. 1983); *Collier v. Memphis Light, Gas & Water Div.*, 657 S.W.2d 771, 776 (Tenn. Ct. App. 1983), and defined the circumstances in which local governmental entities could be subject to suits for damages. *See Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). Consistent with the earlier precedents, the Act authorized civil actions for damages against local governmental entities for the "defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway" and for the "dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement" owned and controlled by a local governmental entity. *See* Tenn. Code Ann. §§ 29-20-203(a), -204(a) (1980 & Supp. 1998). For these purposes, the terms "street" and "highway" include traffic control devices installed by the local governmental entity. *See* Tenn. Code Ann. § 29-20-203(a).

These statutes are directly applicable to the case at hand. The Airport Authority is a "governmental entity" as defined in Tenn. Code Ann. § 29-20-102(3)

---

[6]*See* Act of May 14, 1973, ch. 345, 1973 Tenn. Pub. Acts 1243, *codified as amended*, Tenn. Code Ann. §§ 29-20-101, -407 (1980 & Supp. 1998).

(Supp. 1998) because it is an instrumentality of government created by act of the General Assembly and the Metropolitan Government of Nashville and Davidson County. *See* Tenn. Code Ann. §§ 42-4-101, -117 (1993 & Supp. 1998).[7] In addition, the parking lots at the airport, together with the traffic control devices installed in the parking lots, amount to streets, sidewalks, and public improvements owned and controlled by the Airport Authority for the purpose of Tenn. Code Ann. §§ 29-20-203(a), -204(a).[8]

## IV.

We now turn to the principles governing liability determinations in premises liability cases involving local governmental entities. Because of their superior knowledge of the condition of the premises, owners and occupiers of property, including owners and occupiers of public property, owe persons lawfully on their property the duty of reasonable care under all the circumstances. *See McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980); *Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn. Ct. App. 1996). This duty includes the duty either to remove dangerous conditions on their premises or to warn persons about dangerous conditions that the owner knows or should know about. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994). It does not include the duty to remove or to warn about conditions from which no unreasonable risk could be anticipated or conditions that the owner or occupier neither knew about nor could have reasonably discovered. *See Rice v. Sabir*, 979 S.W.2d 305, 309 (Tenn. 1998).

Premises liability claims against local governmental entities have four basic ingredients: (1) proof that the governmental entity owns and controls the premises

---

[7]The Metropolitan Airport Authority Act states that the "airport authorities created pursuant to this chapter shall be public and governmental bodies acting as agencies and instrumentalities of the creating and participating municipalities." *See* Tenn. Code Ann. § 42-4-102(a) (1993). These authorities are created by a resolution adopted by the municipality's local governing body and approved by the executive officer of the municipality. *See* Tenn. Code Ann. § 42-4-104(c) (1993).

[8]Authoritative texts state that airports and parking facilities, especially facilities charging a fee to park, are proprietary activities and that governmental entities may be liable for negligence in their operation and maintenance. *See* 18A James Perkowitz-Solheim, et al., *McQuillin Municipal Corporations* §§ 53.96, 53.107.10 (3d ed. 1993); 1A Chester J. Antieau & John M. Antieau, *Antieau's Local Government Law* §§ 11.127, 11.128 (1995). Accordingly, the California Court of Appeals has held that a local governmental entity may be held liable for failing to provide adequate lighting in an airport parking lot. *See Slapin v. Los Angeles Int'l Airport*, 135 Cal. Rptr. 296, 298 (App. Ct. 1976).

where the injury occurred; (2) proof that a dangerous or defective condition, or in the case of sidewalks and streets an unsafe condition, caused the injury; (3) proof that the governmental entity had "constructive and/or actual notice" of the condition; and (4) proof that the governmental entity breached its duty either to remove or eliminate the dangerous condition or to provide adequate warnings of the condition's existence. *See* Tenn. Code Ann. §§ 29-20-203(b), -204(b); *Burgess v. Harley*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996).

The requirement of actual or constructive notice reflects the understanding that a property owner's duty stems from its superior knowledge of the condition of the premises. The proof of actual or constructive notice may take two forms. First, actual knowledge can be proved by demonstrating that the owner or occupier, or an agent of the owner or occupier, was responsible for causing or creating the condition. Second, if the owner or occupier, or their agent, did not cause or create the condition, constructive notice can be proved by demonstrating that the condition existed for a sufficiently long length of time that the owner or occupier, or their agent, in the exercise of reasonable care, should have become aware of the condition. *See Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). This court has applied these principles in premises liability cases brought under the Tennessee Governmental Tort Liability Act. *See McCorkle v. County of Dyer*, No. 02A01-9701-CV-00020, 1998 WL 155437, at *2-3 (Tenn. Ct. App. Apr. 6, 1998) (Tenn. R. App. P. 11 application dismissed); *Wilson v. City of Lebanon*, No. 01A01-9110-CV-00353, 1992 WL 279863, at *2 (Tenn. Ct. App. Oct. 14, 1992) (No Tenn. R. App. P. 11 application filed).

## V.

It remains to be decided whether the Airport Authority and Republic Parking are entitled, as a matter of law, to a judgment dismissing Mr. Sears' negligence claims against them. They can prevail only if one of two circumstances exist. First, they are entitled to a summary judgment if they establish conclusively that they have an affirmative defense to Mr. Sears' action. Second, they are entitled to a summary judgment if they affirmatively negate an essential element of Mr. Sears' case. *See Whitehaven Community Baptist Church v. Holloway*, 973 S.W.2d 592, 595 (Tenn.

1998); *Byrd v. Hall*, 847 S.W.2d at 215 n.5. In either circumstance, they have demonstrated that there is no need for a trial.

Neither the Airport Authority nor Republic Parking used their summary judgment motion to assert an affirmative defense. Rather, they were essentially asserting that Mr. Sears would be unable to prove all the elements of his cause of action. As we will demonstrate, the Airport Authority and Republic Parking have not succeeded. Viewing the evidence in the light most favorable to Mr. Sears, there is substantial doubt that the facts require a judgment for either the Airport Authority or Republic Parking as a matter of law.

## A.
### OWNERSHIP AND CONTROL OF THE PREMISES

There is no real dispute regarding the ownership and control of the short term parking lot at the airport. The Airport Authority owns and controls this parking lot. While undoubtedly Republic Parking has some control over the operation of the parking lot, there is no evidence that it exercises exclusive control over the parking lot or that it is not acting as the Airport Authority's agent with regard to the operation and maintenance of the parking lot. There is likewise no proof that Republic Parking is somehow independently responsible for installing and maintaining the traffic control device at issue in this case.

## B.
### THE EXISTENCE OF A DANGEROUS CONDITION

The Airport Authority asserts in its brief that "the condition of the exit arm cannot be deemed 'dangerous'" as a matter of law. However, in negligence cases, the jury is ordinarily left to decide whether a condition is dangerous when some competent evidence of hazard exists. *See Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn. 1996); *Ogilvie v. Metropolitan Gov't*, No. 01A01-9709-CV-00466, 1998 WL 272793, at *2 (Tenn. Ct. App. May 29, 1998) (No Tenn. R. App. P. 11 application filed); *City of Knoxville v. Ferguson*, 34 Tenn. App. 585, 590, 241 S.W.2d 612, 614 (1951). This record contains competent evidence from which a reasonable

fact-finder could conclude that the traffic control device at the exit to the short term parking lot was dangerous or unsafe.

The very manner in which Mr. Sears was injured provides an indication of how dangerous the traffic control device can be to persons who are not riding in vehicles with roofs. The arm closed directly on Mr. Sears because his motorcycle had no roof, roll bar, or other similar protection. In addition, the fact that the Airport Authority and Republic Parking decided to post cautionary signs directed to pedestrians, bicyclists, and motorcyclists provides some evidence that the operation of the traffic control device might pose a danger to persons on foot or riding motorcycles or bicycles.

## C.

### KNOWLEDGE OF THE EXISTENCE OF THE CONDITION

Both the Airport Authority and Republic Parking knew of the existence and manner of operation of the traffic control device at the exit from the short term parking lot. Because they were responsible for the device's installation and maintenance, it is reasonable to presume that they understood how it was designed to operate and how it was operating in May 1994. The fact that they placed a warning sign on the stanchion cautioning motorcyclists, bicyclists, and pedestrians not to pass through the device indicates that they understood that the device, even when operating normally, could present a danger to persons who were not riding in vehicles.

## D.

### BREACH OF THE DUTY TO REMOVE OR WARN

Owners or occupiers of property may discharge their duty to keep their premises safe for its reasonably expected use in one of two ways. They may either remove or eliminate the dangerous condition, or they may warn persons lawfully on the property of the existence of the dangerous condition. The purpose of the warning is to enable persons lawfully on the premises to avoid the dangerous condition. Removing the allegedly dangerous condition was not an option in this case because the traffic control device was an integral part of the short term parking lot. Accordingly, the duty implicated in this case is the duty to warn.

Municipal corporations, like other owners or occupiers of property, have a duty to warn persons of dangers on their property. *See Coln v. City of Savannah*, 966 S.W.2d at 39; *accord Galati v. Lake Havasu City*, 920 P.2d 11, 16 (Ariz. Ct. App. 1996); *Welsh v. Metropolitan Dade County*, 366 So.2d 518, 521 (Fla. Dist. Ct. App. 1979); *Schweizer v. City of Maplewood*, 784 S.W.2d 842, 843 (Mo. Ct. App. 1990); *Roberts v. City of Grapevine*, 923 S.W.2d 169, 171-72 (Tex. App. 1996); *Smith v. Acme Paving Co.*, 558 P.2d 811, 814-15 (Wash. Ct. App. 1976). When this duty exists, questions arise concerning the nature and extent of the warning that should be required.

As a general matter, local governmental entities need only use ordinary care when they provide warnings of the existence of a dangerous condition. *See Bannister v. Town of Noble*, 812 F.2d 1265, 1268 (10th Cir. 1987); *Cooper v. City of Fairhope*, 83 So.2d 321, 323 (Ala. 1955). The warning must be calculated to bring the danger to the attention of an ordinary prudent person under the circumstances. *See Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 636-37 (Tenn. 1985) (discussing the adequacy of warnings in product liability cases); *Trimble v. Irwin*, 59 Tenn. App. 465, 473, 441 S.W.2d 818, 822 (1968). Once a court determines that a duty to warn exists, it is for the jury to decide whether the actions of the owner or occupier of the property satisfactorily discharged the duty. *See Glenn v. Conner*, 533 S.W.2d 297, 302 (Tenn. 1976); *see also Bigelow v. City of Ontario*, 99 P.2d 298, 301-02 (Cal. Ct. App. 1940) (stating that the sufficiency of warnings given by the city of a dangerous condition should be left to determination by the triers of fact).

Courts and legal commentators have written extensively on the content and formats appropriate to warnings, and we need not catalogue this *œuvre* here. At this stage of the proceeding, it is sufficient to note that the sufficiency of a warning may depend on such things as its placement, its content, the use of color and size of print, and the employment of symbols used to draw attention to the nature and extent of the adjunctive danger. *See e.g.*, *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 656 (7th Cir. 1998) (containing a general discussion on warnings); *Salvati v. Department of State Highways*, 405 N.W.2d 856, 859, 862-63 (Mich. 1982); David Polin, *Failure to Warn as Proximate Cause of Injury*, 8 Am. Jur. Proof of Facts 3d 547 (1990).

Mr. Sears filed a detailed affidavit opposing the motion for summary judgment and included with the affidavit a videotape made two days after the accident showing

the route he used to enter and leave the parking lot. He states in his affidavit that on the day he went to the airport, there was a large blue sign at the entrance to the parking lot containing information about the price to park. He also states that as he entered the parking lot, he did not see any sign warning motorcyclists not to park in the short term parking lot or cautioning them about the danger posed by the operation of the traffic control device at the exit from the parking lot. In addition, he states that he observed no warning signs in the portion of the parking garage where he parked. Finally, Mr. Sears concludes that if signs were present, their size, location, and color detracted from their prominence and visibility to persons entering and leaving the parking lot.

Mr. Sears also states that he was unaware of other exits from the short term parking lot that would not have required him to pass through a traffic control device similar to the one that injured him. He added that there were no signs in the parking lot directing motorcyclists to these exits. He also stated that he did not see the caution sign on the stanchion as he left the parking lot "because it is relatively small, painted the same color as the gate post and barrier post, and was obstructed from view by the barrier post which is at the same approximate height . . ." The videotape attached to Mr. Sears' affidavit strongly corroborates Mr. Sears' testimony.

After reviewing the evidence both supporting and opposing the summary judgment motions, we conclude that reasonable minds could differ on whether the Airport Authority and Republic Parking gave adequate warning that the short-term parking exit gate arm's operation posed a hazard to motorcyclists. Accordingly, the Airport Authority and Republic Parking have not affirmatively negated this essential element of Mr. Sears' case.

### E.
### THE CAUSE OF MR. SEARS' INJURIES

Both the Airport Authority and Republic Parking argued, and the trial court apparently concluded, that Mr. Sears' injuries were caused not by the traffic control device but rather by his inattentiveness. As Republic Parking puts it, Mr. Sears "admitted during his deposition that he was not paying attention while traveling through the controlled parking area." The Airport Authority adds that the undisputed facts demonstrate that Mr. Sears "could have seen the yellow protective post and

block from which the arm extended, but he did not see them because he was watching the arm."

No negligence claim can succeed unless the plaintiff can prove that the defendant's conduct was a cause-in-fact of the plaintiff's loss. *See Waste Mgmt., Inc. of Tenn. v. South Cent. Bell Tel. Co.*, No. 01A01-9504-CV-00182, 1997 WL 71811, at *4 (Tenn. Ct. App. Feb. 21, 1997) (No Tenn. R. App. P. 11 application filed). The plaintiff need not prove that the defendant's conduct was the sole cause-in-fact of the loss because a single injury may be the result of more than one cause-in-fact. *See Burgess v. Harley*, 934 S.W.2d at 68. To be the cause-in-fact of an injury, the negligent conduct must have been a substantial factor in bringing about the injury. *See Boling v. Tennessee State Bank*, 890 S.W.2d 32, 36 (Tenn. 1994). Cause-in-fact issues are ordinarily questions of fact for the jury. *See Eaton v. McLain*, 891 S.W.2d at 590.

Persons operating moving vehicles, including motorcycles, are required to observe those things which, in the exercise of ordinary care, are there to be seen. *See Ferrer v. City of Memphis*, Shelby Law No. 5, 1988 WL 55741, at *2 (Tenn. Ct. App. June 2, 1988) *perm. app. denied* (Tenn. Aug. 22, 1988); *Shew v. Bailey*, 37 Tenn. App. 40, 46, 260 S.W.2d 362, 364-65 (1951); *King v. Tennessee Cent. Ry. Co.*, 36 Tenn. App. 192, 201, 253 S.W.2d 202, 206 (1952). Mr. Sears' statements in his deposition and affidavit do not necessarily lead to the conclusion that he was inattentive to visible hazards in his path. He stated that he watched the arm rise and descend when the automobile in front of him left the parking lot, and he added that he could not see the stanchion of the traffic control device where the caution sign was affixed because the automobiles ahead of him blocked his view until the last automobile passed the traffic control device.

Mr. Sears watched the movement of the arm on the traffic control device when his time came to leave the parking lot. When the arm did not rise as quickly as he expected, Mr. Sears was required to bring his motorcycle to almost a complete stop. He proceeded through the traffic control device only after he believed that the arm had ascended to its maximum height. Based on this evidence, we cannot say, either as a finding of fact or conclusion of law, that Mr. Sears was inattentive or that he would not have been injured had he been paying more attention to the stanchion as opposed to the moving arm on the traffic control device. If anything, a reasonable

-13-

finder-of-fact might be more apt to conclude that a person who did not watch the moving arm on the traffic control device was inattentive.

The Airport Authority and Republic Parking attach a great deal of significance to the caution sign on the stanchion of the traffic control device at the exit from the parking lot. However, the impact of this sign on persons leaving the parking lot is diluted by the fact that it is largely obscured by the yellow post in front of it. A reasonable fact-finder could conclude that the partially obscured sign would fail to provide any meaningful warning, even to persons looking in the sign's general direction.

Causation questions are fact-sensitive and require that the evidence be reviewed in light of logic and common sense. *See Burgess v. Harley*, 934 S.W.2d at 68-69. It is not our prerogative at this stage of the proceeding and in light of this record to conclude that Mr. Sears' conduct was the sole cause-in-fact of his injuries. The evidence concerning causation does not entitle the Airport Authority or Republic Parking to a judgment as a matter of law. What part, if any, Mr. Sears' inattentiveness played in his injuries should be left to the fact-finder's determination under principles of comparative fault.

## VI.

The trial court also based its decision to grant the Airport Authority and Republic Parking summary judgments on its conclusion that the operation and condition of the traffic control device was open and obvious. The trial court arrived at this conclusion before the Tennessee Supreme Court determined that owners and occupiers of premises were not relieved of their duty to remove or to warn of a dangerous condition simply because the danger was "open and obvious." *See Coln v. City of Savannah*, 966 S.W.2d at 43. Now that the "open and obvious" doctrine has been subsumed in the comparative fault analysis, we doubt that the trial court would have dismissed Mr. Sears' complaint solely on the basis that the operation and condition of the traffic control device was open and obvious.

## VII.

We vacate the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs of this appeal in equal proportions to the Metropolitan Nashville Airport Authority and Republic Parking Systems, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD,
PRESIDING JUDGE, M.S.

_____
WALTER W. BUSSART,
 SPECIAL JUDGE