[Civ. No. 4188. Third Appellate District.—September 10, 1931.]

EDITH MAGNUSON, Respondent, v. CITY OF STOCKTON, Appellant.

J. Leroy Johnson and Clarence A. Grant for Appellant.

Gumpert & Mazzera and C. H. Hogan for Respondent.

PRESTON, P. J.—The plaintiff, Edith Magnuson, brought this action to recover damages for the death of her minor son, Kenneth Charles Harrison, charging that his death was caused by the negligent manner in which the defendant, City of Stockton, maintained in said city a public park and playground surrounding a body of water known as "Yosemite Lake".

It is the claim of plaintiff and respondent that the boy, while playing along the shores of said lake, met his death by falling from the bank into the water below and drowning, and that the fall was caused by the lack of a fence, guard-rails or other barriers along the shores of said lake.

The cause was heard before a jury and resulted in a verdict and judgment in favor of the defendant, City of Stockton. The plaintiff made a motion for a new trial, which was granted, the order granting the new trial reading in part as follows:

"Upon the one and sole ground, that the giving of the instruction hereinafter set forth, constituted error, said instruction being as follows, to-wit:

" 'Instruction No. III. Certain evidence has been permitted, concerning other accidents than the one complained

of in the complaint, at Yosemite Lake. This evidence is not to be considered by you to establish the fact that the City may have been at fault or liable for the death of Kenneth Charles Harrison. That evidence was permitted to be introduced for the limited purpose of showing that the governing board or the officers of the City may have had knowledge or notice that a dangerous condition may have existed at Yosemite Lake.'"

The plaintiff proved that prior to the drowning of her son in Yosemite Lake, three other children had been accidentally drowned in said lake. This evidence was properly admitted as tending to show the dangerous condition existing at the lake, the cause of the boy's death, and, furthermore, as tending to bring home to appellant, knowledge of the dangerous condition existing at said lake, and the jury had a right to consider the testimony for these three purposes, and the court erred in giving to the jury the foregoing instruction. (*Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083, 1085]; *Dyas* v. *Southern Pac. Co.,* 140 Cal. 296, at 305 [73 Pac. 972]; *Malone* v. *Hawley,* 46 Cal. 409; *Rafferty* v. *City of Marysville,* 207 Cal. 257, at 262 [280 Pac. 118]; 10 Cal. Jur. 827; 65 A. L. R. 381–387.)

Appellant argues "that there is no evidence in the record to show the place where the other three children were drowned, nor the manner in which they met their death", etc. It is true that more of the facts and circumstances surrounding the three prior accidents might well have been shown, but the rule is well settled that in order to permit the admission of testimony of previous accidents it is not necessary that it be shown that such accidents occurred under circumstances *precisely* the same as those characterizing the accident in question, but it is sufficient *that they are similar in their general character.* (*Robinson* v. *Western States Gas & Elec. Co.,* 184 Cal. 401 [194 Pac. 39]; *Long* v. *John Breuner Co.,* 36 Cal. App. 630 [172 Pac. 1132].) This rule must necessarily be true, for it would be very difficult, if not impossible, to show that two persons were drowned in *exactly* the same place and in the same manner. Accidents do not happen that way. The record shows that these three children were all drowned in Yosemite Lake, which is under the control and management of the appellant, and which is

a place where children are invited to play and the banks of the lake were steep and slippery and absolutely unprotected. These facts are sufficient as a basis for the admission of the evidence that prior to the death of the Harrison boy, three other children were drowned in said lake. Furthermore, it must be remembered that we are here considering only the admissibility of evidence of previous accidents at this lake, and not the weight and conclusive effect to be given to such testimony. That was a question for the jury.

Appellant next contends that the order granting a new trial should be reversed for the reason that the trial court should have granted appellant's motion for a nonsuit. The court's power and limitations with reference to the granting of a nonsuit are clear and well defined. ■ The motion admits the truth of plaintiff's evidence and every inference which can legitimately be drawn therefrom, and upon such motion the evidence should be interpreted most strongly against the defendant. The authorities supporting this rule are legion and we need only cite the following: *Estate of Arnold,* 147 Cal. 583 [82 Pac. 252]; *Bakos* v. *Shell Oil Co.,* 94 Cal. App. 243 [271 Pac. 127]; *Berger* v. *Lane,* 190 Cal. 443; *Rabe* v. *Western Union Tel. Co.,* 198 Cal. 290 [224 Pac. 1077].

This action is based upon the act of 1923, subdivision 2, Statutes of 1923, page 675, Deering's General Laws, act 5619, which provides:

"Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition."

Kenneth Charles Harrison, at the time of his death, was of the age of seven years and nine months, in good physical condition and in full possession of his faculties. He resided with his mother and stepfather at 1815 Elizabeth Avenue, Stockton, California, within five blocks of Yosemite Lake. On the day of the accident, the boy attended school and returned home about 2:30 in the afternoon, played with other children in the neighborhood until about 4:15 P. M. When his mother called him for supper he did not answer. A search of the neighborhood was made, but the boy could not be found. Yosemite Lake was dragged and his body was discovered at the southwest corner of the lake shore in about fifteen feet of water. Yosemite Park, in which the lake in question is situated, was owned and controlled by appellant; the water in said lake varied in depth from six to fifteen feet; the banks on all sides were steep and slippery. Due to the condition of the banks it was difficult for experienced swimmers to get out of the lake except at a few advantageous points. There were no fences, barriers or guard-rails of any kind or description along any of the banks or slopes of said lake, but the entire shores of said lake were open and unprotected. The city had leveled the ground surrounding the lake up to the edge of the banks and had planted the same to grass, and made it attractive to children. Prior to the drowning of the Harrison boy, three other children had been accidentally drowned in said lake. Notice of the dangerous condition existing at the lake had been brought to the attention of the superintendent of playgrounds of said City of Stockton, prior to the accident in question. At least one member of the city council of appellant admitted that he had actual knowledge of the actual drowning of other children in said lake prior to the death of the Harrison boy.

It was also testified that at least one person appeared personally before the city council of the City of Stockton, at one of its regular meetings, prior to the death of plaintiff's son and advised the city council of the dangerous condition existing at said lake, and asked them to take steps to remedy such condition. At the point where plaintiff's son's body was recovered from said lake the banks were precipitous.

From the foregoing brief statement of the facts it is clear that plaintiff not only proved that a dangerous con-

dition existed at Yosemite Lake, but that appellant had both knowledge and actual notice of the existence of such dangerous condition and did not remedy such dangerous condition within a reasonable time after obtaining knowledge and notice of its existence, or at all.

The only remaining fact to be proved by plaintiff to establish at least a *prima facie* case against appellant is that her son met his death as a result of the dangerous condition of the banks of said lake.

Appellant insists "that there is no specific testimony as to the cause of the boy's death, other than that he was found drowned in the lake . . . and not one word of testimony to show that the alleged dangerous condition of the banks of said lake caused the boy's death".

There were no eye-witnesses to the accident. In the very similar case of *Gorman* v. *County of Sacramento, supra,* this court said:

"It is true, as contended by appellant, that by proving a defendant's negligence, without in some way fastening that negligence to the injury, a case is not made out. (*Union Investment Co.* v. *San Francisco Gas etc. Co.,* 168 Cal. 58 [141 Pac. 807].) This rule, however, does not require demonstration of the connection between the proved or admitted negligence and the resulting injury. It is not necessary that an eye-witness be produced to testify directly to the fact. The connection may be made by circumstantial evidence in the same way that any other fact can be proved," citing *County of Alameda* v. *Tieslau,* 44 Cal. App. 332 [186 Pac. 398]; *Ross* v. *San Francisco-Oakland T. R. Co.,* 47 Cal. App. 753 [191 Pac. 703].

"There is also another well-recognized rule of law applying to accidents like the one in the case at bar, to-wit: that deceased is presumed to have exercised ordinary care for his own safety. This rule is fully and clearly stated by Mr. Justice Henshaw in the case of *Crabbe* v. *Mammoth Channel G. M. Co.,* 168 Cal. 500, at page 506 [143 Pac. 714, 716], as follows: 'Where death is occasioned under circumstances such as this, without eye-witnesses, the law comes to the aid of the plaintiff who is pressing a suit for damages for the death, and that law is found in the presumption of the Code of Civil Procedure, namely, that a person takes ordinary care of his own concerns. (Sec. 1963, subd. 4, Code

Civ. Proc.)   This is a controvertible presumption, it is true, but until controverted it is evidence in accordance with which the jury is bound to decide.'   (See, also, *Boyle* v. *Coast Imp. Co.*, 27 Cal. App. 714 [151 Pac. 25]; *Kreitzer* v. *Southern Pac. Co.*, 38 Cal. App. 654 [177 Pac. 477]; sec. 1961, Code Civ. Proc.; *Ross* v. *San Francisco-Oakland T. R. Co., supra.*)

"In applying this principle of law to personal injury cases the Supreme Court of the United States, in the case of *Baltimore & P. R. Co.* v. *Landrigan*, 191 U. S. 461 [48 L. Ed. 262, 24 Sup. Ct. Rep. 137; see, also, Rose's U. S. Notes], said: 'The presumption is founded on a law of nature.   We know of no more universal instinct than that of self-preservation, none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming, and death.   There are few presumptions based on human feelings or experience that have surer foundation . . . '

"When recourse must be made to this rule of human conduct in determining the question of responsibility in cases of accident like the one in the case at bar, it is fair to assume, there being no evidence in the record to the contrary, that when deceased met his death he was exercising due and proper care for the protection of his person and the preservation of his life.   This presumption is sufficient to constitute *prima facie* evidence that the deceased at the time he was drowned was free from contributory negligence. (*Fleenor* v. *Oregon Short Line R. Co.*, 16 Idaho, 781 [102 Pac. 897]; *Ross* v. *San Francisco-Oakland T. R. Co., supra.*)"

In fact, the Gorman case answers practically all of the arguments advanced by appellant.   (See, also, *Tyson* v. *Burton*, 110 Cal. App. 428 [294 Pac. 750], and cases there cited; *Larrabee* v. *Western Pac. R. Co.*, 173 Cal. 743 [161 Pac. 750]; *Ross* v. *San Francisco-O. T. Railways*, 47 Cal. App. 753 [191 Pac. 703]; *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 187 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].)

While it seems to us that more of the circumstances surrounding the drowning of the Harrison boy might well have been detailed to the court and jury, the evidence does reveal, however, that the boy was fully clothed when his body was found; his shoes and stockings were on and no

marks of violence of any character were found on his body. No evidence appeared that he had attempted to go in swimming or get into any rowboat on the lake. There is also some evidence that the fishing tackle found on the banks of the lake near where the body was recovered belonged to the boy's stepfather with whom he was living at the time he met his death. We think that the only reasonable inference which can be drawn from all the facts and circumstances revealed by the record is that the deceased met his death by falling from the banks of Yosemite Lake into the water below and drowning, and that the fall was occasioned by the lack of protection along the shores of said lake.

Appellant lays great stress upon the case of *Scott* v. *City of Long Beach,* 109 Cal. App. 254 [292 Pac. 664]. We think the facts in that case are very different from those in the case at bar. There the deceased knew the dangerous condition of the water and was expressly warned of the depth of the water a few moments before the accident.

We find no merit in the contention of appellant that Yosemite Lake is a navigable body of water, and, therefore, under the paramount jurisdiction of the United States government. The lake with its steep slippery banks was and is just as dangerous if it be navigable water as it would be if it were not. Appellant admitted that it owned and controlled the ground up to the edge of the banks of the lake and also the banks above high tide. It is also admitted that it had leveled the ground up to the edge of the lake and planted it to grass and shrubbery and made it attractive to children.

Regardless of who had paramount control of the water in the lake, the edge or banks of this lake were dangerous, because it was left by appellant unprotected and there was nothing to prevent children or adults who might venture near the edge of the bank from slipping or falling into the water of the lake. Furthermore, appellant had assumed dominion and control over the lake and it was within the corporate limits of said city.

We are, therefore, of the opinion that the court did not err in denying the motion for a nonsuit and did not err in granting a new trial.

The order granting a new trial is, therefore, affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 9, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 9, 1931.