[Civ. No. 2435. Fourth Appellate District.—February 7, 1940.]

PEARL BIGELOW et al., Respondents, v. CITY OF ONTARIO (a Municipal Corporation), Appellant.

200

Archie D. Mitchell for Appellant.

Martin J. Coughlin for Respondents.

MARKS, J.—This is an appeal from a judgment against the City of Ontario for damages resulting from personal injuries suffered by Mrs. Pearl Bigelow, wife of N. H. Bigelow, on August 14, 1937, while riding over Sultana Avenue, a public street of that city, as a guest in an automobile belonging to and being driven by her son-in-law. Appeal is also taken from an order denying a motion for judgment notwithstanding the verdict. The Southern Pacific Company was joined as defendant. Judgment went in its favor and no appeal has been taken from that portion of the judgment. We will hereafter refer to the City of Ontario as the city.

The action against the city is brought under the public liability act (Stats. 1923, p. 675) which makes a municipality liable for damages resulting from a dangerous or defective condition of a public street, where the proper municipal officers had notice of such condition and had failed or neglected, for a reasonable time thereafter, to remedy such condition or to take such action as might be reasonably necessary to protect the public against it. It is

now well settled that such a condition must not be a trivial defect but must constitute an actual danger to a person using the street in a lawful manner. (*Rodkey* v. *City of Escondido*, 8 Cal. (2d) 685, 686 [67 Pac. (2d) 1053].)

The city earnestly maintains that the evidence fails to support the implied finding of the jury that there was a defective or dangerous condition on Sultana Avenue at the point of the accident; that the responsible officers of the city had no notice of any such condition; that before the accident they did take such action as was reasonably necessary to warn the traveling public against the condition.

The foregoing contentions require us to summarize the evidence, which is sharply conflicting, on the question of there being a defective or dangerous condition in the street. Under the time-honored rule, that conflicts in the evidence are addressed to and settled by the jury, we will confine ourselves to a summary of the evidence which supports the verdict and judgment and will disregard the mass of conflicting evidence.

Sultana Avenue runs north and south. Several years before the accident its grade was established by the city, and, by means of local improvement proceedings, it was paved by the city to the established grade. Plans, profiles and specifications for the improvement were prepared and adopted by the city and were followed by the contractor who did the work. No material change in the surface of the street had occurred between the time of the completion and acceptance of the work and the time of the accident.

Sultana Avenue is crossed at near right angles by seven tracks, a series of parallel rails of the Southern Pacific Company. During the trial these tracks were numbered from one to seven with the numbers ascending from north to south. Tracks one and two are north of the place of the accident and are of no particular importance here. Tracks three, four, five and six parallel each other and are between seven and ten feet apart. Track five is the main line track. The others are switching or yard tracks. Track seven is about thirty feet south of track six and parallels it.

The general grade of Sultana Avenue slopes gently to the south. A few feet north of track three there is a break in the grade where it rises slightly to the level of the four parallel tracks. Upon this level Sultana Avenue crosses the tracks without material deviations except such as are ordi-

narily found in railroad crossings that have been in use for several years. At about the south rail of track six there is a break of grade and a rise in the pavement for a short distance, the exact length or height of which we cannot determine. However, this rise is clearly shown in five photographs introduced in evidence by defendants. (Defendants' exhibits "L", "M", "N", "O", and "P".) The same photographs show that this rise ends abruptly and that the grade breaks sharply and descends to the south without either a curved or level space at the top. The evidence offered by the city shows that the grade descends three and three-tenths feet in twenty-nine feet to a point near the north rail of track seven where it either levels off or ascends slightly to that track. The city had placed a sign on the west side of Sultana Avenue about three hundred feet north of the tracks. This sign stood about three hundred ninety feet from the sharp break in the grade and had on it "DIP 300 ft.". It is admitted that the other warning signs shown in the photographs were placed on the street after the accident.

During the trial the witnesses continually referred to this break in the grade as a "dip". It is rather clear that in using the expression "a dip" they referred to the descent of grade from the high point south of track six and did not refer to any descent of grade with a corresponding ascent which is the usual meaning of that term. There was no "dip" in the pavement as that term is generally understood but rather a sharp hump south of the south rail of track six. The intended meaning given to the word "dip" by the witnesses, particularly those of plaintiffs, to describe a drop from a hump in the road, instead of a saucer shaped depression, seems to have been understood by all parties so that no prejudice resulted therefrom.

Shortly after 10 o'clock on the morning of August 14, 1937, plaintiffs were riding south on Sultana Avenue in a sedan. R. Greenhill was driving and N. H. Bigelow was sitting on the front seat at his right. Mrs. Pearl Bigelow and Mrs. Hazel Greenhill, her daughter, occupied the rear seat. The evidence is uncontradicted that in traversing Sultana Avenue to the place of the accident the speed of the sedan was between twelve and fifteen miles an hour.

None of those in the sedan had traveled over Sultana Avenue before nor did they know anything of the grade line of the street. The driver testified that he did not know of the descent south of track six until the front of his car had reached it; that as the front of his car was descending the grade he felt the rear "sort of whip up"; that it was thrown up; that his wife called a warning and he stopped within twenty feet; that he found Mrs. Bigelow lying between the seats on the floor boards seriously injured. This testimony, in respect to the rear of the car being thrown up, was corroborated by the three passengers. Mrs. Bigelow testified that she was thrown violently against the top of the sedan and fell between the seats. She was seriously injured. Mrs. Greenhill testified that "we crossed the tracks and the next thing I knew we bounced up to the top of the car"; that she fell on the seat and was shaken but not injured.

Plaintiffs produced witnesses who testified that they had driven over this same portion of Sultana Avenue, one of them many times; that the rears of their cars were always thrown up when they crossed the hump south of track six at speeds ranging between ten and fifteen miles an hour.

Plaintiffs produced Mrs. Edna Hughes as a witness. She testified that in 1936 she was riding in a Pontiac sedan, traveling fifteen miles an hour, on Sultana Avenue across the Southern Pacific tracks; that, at the same hump involved here, she was thrown forward and injured. It appears from her cross-examination that she subsequently, probably before the injury of Mrs. Bigelow, sued the city for damages.

Plaintiffs called the clerk of the city as a witness. He produced a claim against the city for damages suffered by some person. This claim was offered as evidence that the city had had notice of the dangerous condition on Sultana Avenue. An objection on behalf of the city to the receipt of this claim in evidence was sustained. The trial judge even refused to allow it to be marked for identification so a copy of it is not in the record. However, from the remarks of counsel we may assume it was the claim filed by Mrs. Hughes for damages suffered by her in the accident already mentioned.

The ruling by the trial court was serious error. The question of notice to the city of the dangerous condition of the roadway was an important issue in the case, proof of which

was necessary to support plaintiffs' cause of action. Proof of other known prior accidents at the same place has been held to constitute notice of a defective or dangerous condition. (*Magnuson* v. *City of Stockton*, 116 Cal. App. 532 [3 Pac. (2d) 30]; *Uttley* v. *City of Santa Ana*, 136 Cal. App. 23 [28 Pac. (2d) 377]; *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118]; *Norton* v. *City of Pomona*, 5 Cal. (2d) 54 [53 Pac. (2d) 952]; *George* v. *City of Los Angeles*, 11 Cal. (2d) 303 [79 Pac. (2d) 723].) Certainly there could be no more competent evidence of notice of a dangerous or defective condition of a street than a claim filed by a person who had been injured while traveling over it.

While we are discussing the question of notice we should advert to the rule, which is well established, that when an improvement, such as street paving, is planned by city officers and is constructed in accordance with such plan, and when by carrying out that plan a dangerous or defective condition has been created, the city is charged with notice of that condition. (*George* v. *City of Los Angeles, supra; Rafferty* v. *City of Marysville, supra; Black* v. *Southern Pac. Co.*, 124 Cal. App. 321 [12 Pac. (2d) 981].) In *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.*, 28 Cal. App. (2d) 215 [82 Pac. (2d) 216], it was held that it was unnecessary for a plaintiff to allege any further notice where the "city created the condition for which plaintiff seeks to hold it liable".

Further, the suit by Mrs. Hughes against the city was notice of the condition and should have put the city upon its inquiry. Counsel for the city argues that Mrs. Hughes was unsuccessful in her suit and therefore neither her claim nor her suit was notice that the condition was dangerous. This argument goes entirely outside the record which contains nothing concerning the results of that action. We are here concerned with the question of notice of the condition, not with the outcome of the suit by Mrs. Hughes. Her claim and suit gave notice of the condition. The question of whether or not that condition was dangerous was a fact to be determined in this action and did not depend on the outcome of the suit by Mrs. Hughes.

The question of whether or not a condition in a public street is actually dangerous and a menace to the safety of the traveling public is usually one of fact which is addressed to the triers of facts. (*Norton* v. *City of Pomona*,

*supra.*) Evidence of accidents at the same place is some evidence that the condition was dangerous. (*Magnuson* v. *City of Stockton, supra; Uttley* v. *City of Santa Ana, supra; Norton* v. *City of Pomona, supra.*) ■ Here we have evidence that Mrs. Hughes had been injured in an accident similar to that of Mrs. Bigelow, in addition to the evidence of Mrs. Bigelow's injury. We also have evidence that other cars were thrown up in crossing the hump, though there was no evidence of any personal injuries in those instances. There is also evidence of the physical condition of the hump and the descent south of it. Other evidence that many cars had crossed the hump without being thrown up created a conflict in the evidence which the jury resolved against the city.

After a careful study of all of the record we have reached the conclusion that there is sufficient evidence in the record to support the implied findings of the jury that a dangerous condition existed in Sultana Avenue which proximately caused the injury to Mrs. Bigelow, and the further implied finding that the responsible officers of the city had notice of that condition and failed to remedy it within a reasonable time. It is true that there is much strong evidence in the record controverting plaintiffs' evidence that the condition was dangerous. That merely created a conflict which the jury resolved against the city. We cannot reverse a judgment supported by substantial evidence merely because there is much more evidence conflicting with it. Such conflicts in the evidence are settled in the trial court.

■ We must next consider the sufficiency of the warning of the condition given by the city. As we have observed, the only warning at the time of the accident consisted of a sign, three hundred ninety feet north of the danger point, having on it, "DIP 300 ft.".

In *Sandstoe* v. *Atchison, T. & S. F. Ry. Co., supra,* it was held that the sufficiency of the warning given by the city of a dangerous condition "clearly should be left to the determination of the triers of facts". This rule should be applied here. About three hundred feet from the sign (the distance stated by the warning) there was a change of grade. Having traveled the three hundred feet, and having observed that change of grade, did the sign give the driver warning of another and more serious change of grade ninety feet further on? A jury should be permitted to answer this

question after serious consideration of the sufficiency of the warning given and the misinformation the sign conveyed.

Under the facts here we cannot disturb the implied finding of the jury that the posting of this sign was not "such action as may be reasonably necessary to protect the public against such dangerous or defective condition". (Stats. 1923, p. 675.)

The judgment and order appealed from are affirmed.

Barnard, P. J., and Griffin, J., concurred.