Filed 3/11/26

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LULIN YAN, | B339583 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV18770) |
| v. | |
| CITY OF DIAMOND BAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bryant Y. Yang, Judge. Affirmed.

Haith Bagnaschi and Christopher J. Bagnaschi for Defendant and Appellant.

---

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Part II of the Discussion.

BD&J and Martin J. Kanarek; Esner, Chang, Boyer & Murphy and Stuart B. Esner for Plaintiff Respondent.

\* \* \* \* \* \*

When a tree branch falls onto a pedestrian on the sidewalk below, is the public entity that planted and maintained the tree liable for the resulting injuries? The jury in this case concluded it was, based on the jury's subsidiary finding that the tree constituted a "dangerous condition" within the meaning of Government Code section 835.[1] On appeal, the public entity does not challenge the sufficiency of the evidence supporting the verdict. Instead, it poses two evidentiary questions. First, does a trial court abuse its discretion in admitting evidence that other trees of the same species and in the same vicinity have experienced "branch falls" in the five years prior to the accident at issue to prove that the public entity was on notice of the dangerous condition? We hold the admission of such evidence for this purpose was within its discretion. Second, does a trial court abuse its discretion in admitting testimony of a neighbor who reported the prior branch falls, even when the neighbor was not himself an arborist and did not personally see the branches fall? In the unpublished portion of this opinion, we hold that this was also not error. We accordingly affirm the judgment for the pedestrian.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

**FACTS AND PROCEDURAL BACKGROUND**

I. **Facts**

A. *The accident*

In the early evening of July 24, 2018, Lulin Yan (plaintiff) was walking down the sidewalk lining Montefino Avenue in the City of Diamond Bar, California (the City). A tree limb with an approximately eight-inch diameter detached from the "upper canopy" of one of the Bradford pear trees on that street and landed on and snapped off two lower branches of the tree, which caused all three to crash down on top of plaintiff, knocking him to the ground. He was transported by ambulance to the hospital, where he stayed for three days. Plaintiff sustained a compression fracture to his spine.

B. *The City's oversight of its trees*

The City owns the Bradford pear trees that line its streets, including along Montefino Avenue, and is responsible for their maintenance. As the City is home to nearly 14,000 trees of many species, it has contracted a third-party arborist to care for its inventory of trees. The contract obligates the arborist to trim the City's trees every five years based on their location on a geographic "grid" and irrespective of species.[2] The arborist also handles any tree-specific requests the City makes, and maintains a database of those work orders. The City's oversight of its trees is otherwise solely reactionary—that is, it responds to resident complaints by alerting the arborist to pick up fallen tree debris. The City's complaint intake system gathers little information on the *reason* for debris pickup, the City retains "very few" records of the complaints it receives, and the few it does keep are "not . . .

_____

[2]	However, the tree that collapsed onto plaintiff had not been trimmed from 2005 to 2015.

organized." Due to this paucity of information, the City has not tracked "patterns" of tree failures.

### C. *The City's awareness of prior branch falls from Bradford pear trees*

Robert Ludowitz, a City resident and the president of the homeowners' association overseeing the neighborhood where the tree limbs fell on plaintiff, had reported several previous incidents of fallen limbs and branches of Bradford pear trees in that neighborhood—all in writing, either by email or by submitting a complaint to the City's online portal. Due to Ludowitz's complaints, the City's records documented the following information prior to plaintiff's accident:

-- The same tree that partially collapsed on plaintiff had experienced two prior branch failures—one five years prior to plaintiff's accident and another ten months prior.[3]

-- In the five years prior to plaintiff's accident, other Bradford pear trees in the same neighborhood experienced branch failures nine separate times.[4] Those incidents included (1) a limb the size of a truck bed falling from a tree canopy in April 2016, (2) a branch falling into an area where children load and unload from school buses in April 2017, and (3) branches falling from two different trees along Montefino Avenue just two weeks before plaintiff's accident. On each occasion, the City

---

[3] That tree also dropped another branch less than three months after plaintiff's accident.

[4] This tally of nine prior branch failures does not include two incidents of fallen branches described at trial that had distinct causes—namely, when a utility worker purposefully pruned the branches of a Bradford pear tree away from a street light and when gusty winds knocked a branch down.

directed the arborist to remove the fallen limbs but otherwise took no action to investigate the cause of these multiple limb failures. In the face of the City's failure to take further action, Ludowitz expressed his displeasure to the City, as he "believe[d] that the City [was] maintain[ing] the trees along Montefino [in]consistently." When Ludowitz learned of plaintiff's injuries, he informed the City that what he feared—a tree limb falling on a person—had "'finally happened.'"

## II.    Procedural Background

In May 2019, plaintiff sued the City for maintaining public property in a dangerous condition.[5]

The dangerous condition claim proceeded to a multi-day jury trial in March 2024.

In support of his claim, plaintiff adduced the following evidence:

--    *Expert arborist opinion.* Plaintiff called a professional arborist, who opined that (1) Bradford pear trees are "ornamental" trees that became popular in residential developments in the 1980s, and (2) the species is no longer

---

[5]    Plaintiff had also sued the City's arborist contractor (for premises liability and negligence), the County of Los Angeles (for maintaining public property in a dangerous condition), and the homeowners' association (for premises liability and negligence). Plaintiff's wife, child, and grandchild were also initially named as plaintiffs, asserting claims for negligence against the homeowners' association and for negligent infliction of emotional distress against all defendants. The defendants asserted various cross-claims against one another.

Following the trial court's rulings on dispositive motions and voluntary requests for dismissal, the only live dispute by the time of trial was plaintiff's dangerous condition claim against the City.

planted due to its "undesirable growth characteristics"—namely, that it grows several "scaffold branches" from the same elevation on its trunk, which results in "very weak connection[s]" between the trunk and the scaffold branches, and those connections "tend[] to break . . . as the tree grows larger."

-- *City's prior "risk assessment."* Plaintiff introduced a "risk assessment" the City commissioned from its arborist in 2008, which noted that Bradford pear trees, as a "species," have a "tendency to split without warning," although the assessment noted that this risk was "not necessarily considered a hazard" as long as the City "has a well documented maintenance history" of the tree.

-- *Evidence of prior branch failures.* As detailed above, plaintiff introduced evidence of the prior tree branch failures of the tree that harmed plaintiff as well as of the other Bradford pear trees in the neighborhood. After litigating the admissibility of these other branch failures in limine prior to trial and revisiting those rulings during trial, the trial court ultimately instructed the jury (1) that it could consider the prior branch failures *as to the tree that harmed plaintiff* as evidence bearing on (a) whether the City had actual or constructive notice of a dangerous condition *and* (b) whether that tree was in a dangerous condition, but (2) that it could consider the prior branch failures *as to the other Bradford pear trees in the neighborhood* solely as evidence bearing on whether the City had "actual or constructive notice of the dangerous condition."

-- *Ludowitz's testimony.* Ludowitz testified that he had reported several tree branch failures with Bradford pear trees in his neighborhood to the City. On direct examination, he testified that he would report fallen limbs he saw on the ground, even

6

though he had not personally witnessed their collapse; because he was not an arborist and had no "training in tree care," he did not purport to know *why* those branches fell. On cross-examination, the City elicited Ludowitz's opinion that the branch failures likely occurred due to the weight of the tree limbs, since he "found" "no bugs" and "no wood rot" (or other disease) when he looked at the limbs on the ground.

The City did not call a contrary expert. Besides disputing the existence of a dangerous condition and notice, the City tendered the defense that it took all "reasonable" "action" to protect against the risk of injury given the "practicality and cost of protecting" against that injury (§ 835.4, subd. (b)), but did not raise the defense that plaintiff's accident was "caused by a natural condition of any unimproved public property" (§ 831.2).

The jury returned a verdict for plaintiff, rejected the City's cost-based defense, and awarded plaintiff $250,000 for past noneconomic loss and $500,000 for future noneconomic loss.

Following the entry of judgment for plaintiff, the City timely filed this appeal.

## DISCUSSION

Rather than challenge the sufficiency of the evidence supporting the jury's verdict for plaintiff, the City argues that the trial court erred in admitting (1) evidence of the prior branch failures of other Bradford pear trees in the vicinity of the tree that injured plaintiff;[6] and (2) Ludowitz's testimony and exhibits of his complaints regarding prior branch failures.

---

[6] Although the City cursorily asserts in passing that the trial court also erred in admitting evidence of the prior branch failures from the same tree that injured plaintiff, the City did not develop that assertion with reasoned argument and has accordingly

7

We review these evidentiary rulings for an abuse of discretion. (*People v. Flores* (2020) 9 Cal.5th 371, 409.) Under this standard, an evidentiary ruling will not be disturbed, and the judgment will not be reversed, unless the trial court exercised its discretion in an "'"'arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'"'" (*People v. Jones* (2017) 3 Cal.5th 583, 609.) In viewing a trial court's evidentiary rulings, we focus on the court's ultimate rulings rather than any earlier pretrial rulings, as a court's "ruling[s] on [] pretrial motion[s] in limine [are] necessarily tentative because subsequent evidentiary developments may change the context" (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 608; *People v. Karis* (1988) 46 Cal.3d 612, 634, fn. 16, italics omitted ["a motion in limine is not generally binding on the trial court"]), and we focus on the propriety of the ultimate rulings rather than the rationales articulated by the trial court to support them (*Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 913).[7]

waived that specific challenge on appeal. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 [argument forfeited where it was not developed with reasoned argument].)

[7] We accordingly have no need to address the City's criticisms of the trial court's initial pretrial rulings or the reasoning underlying its ultimate rulings. Thus, that the court's initial in limine ruling regarding prior branch failures relied in part upon the deposition testimony of the City's expert suggesting that those branch failures should have put the City on notice of a problem with its trees—when the City later elected not to call that expert as a witness at trial—is irrelevant to our consideration of whether the court's final ruling was an abuse of

# I. Admission of Prior Branch Failures

The City argues that evidence of prior branch failures of Bradford pear trees in the vicinity of the accident is inadmissible on relevancy grounds.

## A. *Pertinent relevance-based doctrines*

Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidentiary relevance is a notoriously "low threshold." (*People v. Battle* (2021) 11 Cal.5th 749, 799.) It is satisfied as long as the proffered evidence moves the proverbial needle, even slightly, in proving or disproving a disputed fact of consequence. A trial court enjoys "particularly" "broad discretion" in assessing relevance. (*People v. Crittenden* (1994) 9 Cal.4th 83, 132; *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295-296.)

If evidence clears the low threshold of relevance, it still may be subject to exclusion under Evidence Code section 352 if its degree of relevance—that is, its "probative value"—"is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; *People v. Peoples* (2016) 62 Cal.4th 718, 757.)

We turn first to what facts are of consequence in a claim for dangerous condition of public property.

---

discretion. Similarly, the City's criticisms of *plaintiff's* citations to products liability cases are equally irrelevant (and meritless (*Ault v. International Harvester Co.* (1974) 13 Cal.3d 113, 121-122 [other accidents admissible in products liability cases to prove "knowledge"])).

1. *Pertinent law*
    a. Generally

When a person is injured on public property, the public entity is liable for that injury under the Government Claims Act (§ 810 et seq.) only if (1) "the property was in a dangerous condition," (2) that "dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred," and (3) the public entity was negligent. (§ 835; *Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 517-518 (*Martinez*); *Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1105; CACI No. 1100.) Hinging the liability for a dangerous condition on a public entity's *negligence* is "critical," as a public entity would otherwise act as the insurer of all injuries on public property—a result at odds with longstanding public policy. (*Whiting v. City of National City* (1937) 9 Cal.2d 163, 165; *George v. City of Los Angeles* (1938) 11 Cal.2d 303, 308.)

"A public entity may be negligent—and hence liable for injuries caused by a dangerous condition on its property—in one of two ways." (*Martinez, supra*, 71 Cal.App.5th at p. 518.) First, a public entity is negligent if the entity *itself* "create[s] the dangerous condition." (§ 835, subd. (a); *Fackrell v. City of San Diego* (1945) 26 Cal.2d 196, 203.) Second, and alternatively, a public entity is negligent—even if it did not *create* the dangerous condition on its public property—if it has "actual or constructive notice" of that condition and failed to take "measures to protect against" it. (§ 835, subd. (b); *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 715, 717.) For these purposes, "actual notice" means that the public entity's employees had "actual knowledge" "of the particular dangerous condition in question" *and* "knew or should have known of its dangerous character." (§ 835.2, subd. (a); *State*

10

*v. Superior Court of San Mateo County* (1968) 263 Cal.App.2d 396, 399.)  For these purposes, "constructive notice" of a dangerous condition will be imputed to a public entity if "(1) the dangerous condition existed for a sufficient period of time before the plaintiff's injury, and (2) it was sufficiently obvious that the entity acted negligently in not discovering and repairing it." (*Martinez*, at p. 514; see § 835.4, subd. (b); *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 842-843.)  Whether a dangerous condition is sufficiently obvious that a public entity should be charged with constructive notice of it depends upon "'all [of] the existing circumstances.'" (*Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 367.)  In assessing whether a public entity "acted negligently in not discovering" a dangerous condition, those circumstances include whether the entity employed a "reasonably adequate" "inspection system" for assessing whether its property remains safe for its intended uses. (§ 835.2, subd. (b)(1); *Martinez*, at pp. 514, 519-529; see also *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1203.)

                  b.       Specifically, as to prior accidents

Evidence of prior accidents on public property may be relevant to prove one of two elements of a dangerous condition claim—namely, (1) to prove that the public property was in a "dangerous condition," or (2) to prove that the public entity had actual or constructive notice of that condition.  (*Kopfinger v. Grand Central Public Market* (1964) 60 Cal.2d 852, 861; *Genrich v. Cal.* (1988) 202 Cal.App.3d 221, 227 (*Genrich*); *Gilbert v. Pessin Grocery Co.* (1955) 132 Cal.App.2d 212, 217 (*Gilbert*); *Martindale v. City of Mountain View* (1962) 208 Cal.App.2d 109, 116.)  However, the standard for admitting such evidence "var[ies] in strictness according to the purpose for which the evidence is

11

introduced." (*Genrich*, at p. 228; *Wilkerson v. City of El Monte* (1936) 17 Cal.App.2d 615, 618 ["evidence of the results of other accidents is of no value unless a showing is made as to the circumstances and conditions under which the several accidents occurred"].)

When admitted to prove that the public property *is in a dangerous condition*, a prior accident is admissible only if it occurred under "the same or substantially similar" "conditions" as the accident at issue, although the prior and current accidents need not be "precisely" the same or "identical." (*Laird v. T. W. Mather, Inc.* (1958) 51 Cal.2d 210, 220 (*Laird*); *Genrich*, *supra*, 202 Cal.App.3d at pp. 227-228; *Gilbert*, *supra*, 132 Cal.App.2d at pp. 216-218; *Salas v. Dept. of Transportation* (2011) 198 Cal.App.4th 1058, 1072 ["stricter degree of substantial similarity is required"]; *Alwood v. City of Los Angeles* (1956) 139 Cal.App.2d 49, 58 ["general similarity of conditions is enough to satisfy the rule, identity being impossible and unnecessary"]; cf. *Magnuson v. City of Stockton* (1931) 116 Cal.App. 532, 535 (*Magnuson*); *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 404 (*Hasson*).)

However, when a prior accident is admitted to prove that the public entity *had actual or constructive notice* of the dangerous condition, a prior accident is admissible as long as it is "similar enough" to "attract[] the [public entity's] attention to the dangerous situation [at issue]" and thereby "'impart notice of some particular condition requiring correction.'" (*Genrich*, *supra*, 202 Cal.App.3d at p. 228; *Hilts v. County of Solano* (1968) 265 Cal.App.2d 161, 168-169 (*Hilts*); *Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 432; see also *Hasson*, *supra*, 32 Cal.3d at p. 404.) This standard for similarity is admittedly "relaxed" compared to the standard when admitting

prior accidents to prove a dangerous condition (*Laird*, *supra*, 51 Cal.2d at p. 220; *Genrich*, at pp. 227-228), and the differing standards make sense:  Even prior accidents bearing a lesser degree of similarity to the accident at issue can still impart actual or constructive knowledge of a dangerous condition, including the need to investigate whether such a condition exists (*Tuthill v. U.S.* (S.D.N.Y. 2003) 270 F.Supp.2d 395, 400 ["constructive notice may be attributed to a defendant who had actual notice of a recurring problem in the location the accident occurred"]; Civ. Code, § 19 ["Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself"]; *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437-438 [failure to inquire may constitute negligence]).

> 2.    *Analysis*

Applying the above-articulated standards, the trial court did not abuse its discretion in determining that the prior branch failures of Bradford pear trees in the same vicinity as the tree that injured plaintiff were admissible.  The prior incidents were admitted solely to establish notice, so the prior incidents were admissible so long they were "similar enough" to the incident involving plaintiff to "attract[] the [City's] attention to the dangerous situation [at issue]" and thereby "'impart notice of some particular condition requiring correction.'"  (*Genrich*, *supra*, 202 Cal.App.3d at p. 228; *Hilts*, *supra*, 265 Cal.App.2d at pp. 168-169.)  The trees involved in all the incidents were Bradford pear trees, and there was evidence that this species had an inherent, latent structural weakness.  (Accord, *Ortiz v. Jesus People, U.S.A.* (Ill. App. Ct. 2010) 939 N.E.2d 555, 562 [evidence of a particular tree species' "latent" defects caused "professionals [to] disfavor

13

the species" for falling limbs is relevant to establish liability]; *Smith v. County of San Mateo* (1943) 62 Cal.App.2d 122, 124, 128 [awareness that redwood trees "were dead and partly rotted and were in constant danger of falling to the ground or of being blown down by ordinary winds" relevant to prove notice]; cf. *City of Fredericksburg v. Boyer* (Tex. App. 2024) 697 S.W.3d 352, 358-360 [awareness of Bradford pear trees' inherent defects as a species insufficient to impart *actual* knowledge where there was no reports of "prior incidents involving Bradford pear trees"].) The trees involved in all the incidents were in the same vicinity, which means they were on the same grid-based pruning and maintenance schedule and experienced the same environmental factors that "affect tree health" (such as "soil" and "water"). For the same reason that the repeated recurrence of the same type of accident in a similar location suggests a common problem that warrants investigation (see *Morfin v. State of California* (1993) 12 Cal.App.4th 812, 816-817 [in contesting public entity's design immunity defense, evidence of "unusually high incidence of vehicle-building collisions at other DMV facilities" relevant to show "the extent of the risk which should have been foreseen and guarded against"]), the repeated recurrence of branch failures in a relatively brief period of time from the same species of tree subject to the same maintenance schedule and similar environmental factors also suggests a common problem that should have attracted the City's attention to—and thereby imparted actual or constructive notice of—a particular condition requiring correction.

The City resists this argument with what boils down to four arguments.[8]

First, the City contests our determination that the prior branch failures had the requisite degree of similarity to the incident involving plaintiff because, despite being the same species, each "tree has unique characteristics" and hence "var[ies] significantly depending on age, health environment, and maintenance history." We reject this argument for several reasons. To begin, it is unsupported by any *evidence*, as the City elected not to introduce any testimony at trial as to whether and how the age or health of a Bradford pear tree affects their susceptibility to branch failures (and the trial court's limitation of the prior incidents to those within the same grid eliminated any variation in maintenance history). (See *El Dorado Irrigation Dist. v. Superior Court* (1979) 98 Cal.App.3d 57, 62 ["[a]rgument of counsel of course is not evidence"]; *People v. Waidla* (2000) 22 Cal.4th 690, 735 ["'speculation is not evidence'"].) What is more, the net effect of the City's argument is to exclude all evidence of branch failures from any tree except the specific tree that caused plaintiff's injury: Because that standard is more demanding than the "relaxed" standard applicable when admitting prior accidents to show notice—and, indeed, is even more demanding than the "stricter" standard that applies when admitting prior accidents to prove a dangerous condition—the City is effectively asking us to

---

8     The City also asserts that it would be too costly for it to "perform a full forensic post-mortem by an arborist on every tree branch drop in the City." However, this argument bears on the City's cost-based defense, and has nothing to do with the precursor evidentiary question of whether prior branch failures are *relevant* to prove notice.

15

jettison nearly a century of precedent, including from our Supreme Court. This is an invitation we must decline.

Second, the City asks us to liken this case to cases in which a plaintiff trips on an uneven sidewalk or slips on vomit. We reject these analogies. The City urges that evidence that a sidewalk is uneven in a different location than where a plaintiff tripped is not relevant. Even if we were to assume for purposes of argument that this principle is true (cf. *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 733 [evidence that multiple people tripped on the same sidewalk upheaval as the plaintiff is relevant to show upheaval is not "trivial"]), this principle does not extend to tree branch failures because defects in different segments of a sidewalk do not share the commonalities that are shared by the same species of tree subject to the same maintenance schedule in the same area. The City's analogy to a case about vomit is even more slippery. To be sure, it has been held that "other instances of 'vomit' [at a particular location]" do not establish a public entity's constructive notice of the vomit in a different location where the plaintiff slipped. (*Kotronakis v. City & County of San Francisco* (1961) 192 Cal.App.2d 624, 630-631; accord, *State v. Superior Court of San Mateo County*, *supra*, 263 Cal.App.2d at p. 399 [same, as to other hot coals in the sand on the beach). But, as other courts have noted, that holding "deal[s] with unusual transitory situations [caused by] different third party sources and not, as here, from the condition" of the same species of tree subject to the same maintenance schedule. (*Briggs v. State* (1971) 14 Cal.App.3d 489, 496 [rejecting same argument when admitting evidence of prior mudslides from the same slope].)

16

Third, the City argues that plaintiff has limited the scope of his action by alleging, in his complaint, that the "dangerous condition" was "the Bradford Pear tree at THE LOCATION OF THE INCIDENT"; as a result, the City continues, evidence of branch failures of *other* Bradford pear trees must necessarily be excluded. This argument misreads the complaint, which goes on to allege that the "dangerous condition" stems not only from the "tree at THE LOCATION," but also from the City's failure to "properly maintain[]" or "inspect" that tree which "has a known danger of branch failure." More to the point, the City's argument ignores that the prior branch falls of other Bradford pear trees are still relevant to prove *notice*, which is one of the elements that plaintiff has to prove to prevail on his dangerous condition claim as to "the Bradford Pear tree at THE LOCATION." We reject as nonsensical the City's attempt to reverse engineer an evidentiary limitation from plaintiff's pleading.

Fourth and finally, the City contends that the probative value of the prior branch failures of other Bradford pear trees in the vicinity was substantially outweighed by the danger of undue prejudice and by the risk of confusing the issues due to (1) the potential for the jury to erroneously use the prior branch falls of other trees to prove the specific tree that harmed plaintiff was in a dangerous condition, and (2) the potential dissimilarities in age, health, and maintenance history between the tree that injured plaintiff and the other nearby Bradford pear trees. We reject these arguments. Contrary to what the City inaccurately asserts in its briefs on appeal, the trial court explicitly instructed the jury to consider the prior incidents *solely* on the issue of actual or constructive notice; because we presume that the jury adhered to that instruction in the absence of evidence to the contrary (*People*

17

*v. Johnson* (2015) 61 Cal.4th 734, 770), and because there is no such evidence here, we presume that the jury instructions mitigated any risk of misuse.[9]  (See *People v. Lindberg* (2008) 45 Cal.4th 1, 26 [limiting instructions provided to eliminate "any danger 'of confusing the issues, or of misleading the jury'"].)  There was also no risk that the jury would ignore potential dissimilarities between the tree that injured plaintiff and the other trees because the City elected not to introduce evidence of such dissimilarities; and even if the City had, the trial court would have acted well within its discretion under Evidence Code section 352 in admitting *both* the prior branch falls *and* any evidence of dissimilarities—and letting the jury assess for itself whether the prior falls were sufficiently similar to convey notice.  (See *Magnuson, supra*, 116 Cal.App. at pp. 535-536 [affirming admission of evidence of prior deaths at lake to prove public entity's "knowledge of the dangerous condition existing at said lake" and leaving "for the jury" the "question" of "the weight and conclusive effect to be given to such" evidence].)

---

[9]     Although the City did concede at oral argument that the jury was so instructed, the City went on to assert for the first time that the jury instruction admitting the evidence for only one purpose was "fraught."  The City waived this assertion by asserting it for the first time at oral argument (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 500); in any event, the assertion fails because the jury instruction was consonant with the law of dangerous conditions as well as evidence law generally (Evid. Code, § 355 [jury is to be instructed "[w]hen evidence is admissible . . . for one purpose and is inadmissible . . . for another purpose"]).

## II. Admission of Ludowitz's Testimony

The City argues that the trial court erred in allowing Ludowitz to testify regarding the branch failures of the Bradford pear trees that he had reported to the City because (1) he was unqualified to opine about what caused those branch failures because he is "not an arborist," and (2) he did not personally witness the branch failures as they were happening (and instead arrived after limbs were on the ground).[10]

We decline to consider the City's first objection to Ludowitz's testimony regarding *why* the other Bradford pear trees may have dropped their limbs because that testimony was elicited on cross-examination *by the City*. The City is in no position to complain on appeal about the testimony it elicited. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1138-1139 [party's cross-examination questions on topic invited any error, barring appellate challenge].)

The City's second objection to Ludowitz's testimony is wholly without merit. Where, as here, Ludowitz's testimony of the prior branch failures was admitted as evidence solely on the issue of notice, what matters is that Ludowitz told City employees that other Bradford pear trees in the vicinity had dropped limbs. No special expertise is necessary to report a fallen limb or to infer that a limb found on the ground at the foot of a tree had fallen from that tree. (Evid. Code, § 800.) Were we to accept the City's argument, no citizen complaint would be admissible to show notice unless, by serendipity, the citizen happened to be standing there right at the moment the event to be reported was occurring and no inferences—no matter how

---

[10] The City had objected to Ludowitz's testimony on hearsay grounds as well, but abandoned that objection on appeal.

logical—could be drawn absent the citizen coincidentally having some professional expertise; this is not only inconsistent with how logical relevance works, but also goes a long way toward making it practically impossible to prove notice and thus toward immunizing public entities from liability for dangerous conditions, a result wholly at odds with the statutes our Legislature enacted.

## DISPOSITION

The judgment is affirmed.  Plaintiff is entitled to costs on appeal.

**<u>CERTIFIED FOR PARTIAL PUBLICATION</u>**.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
KIM (D.)


_____, J.
KUMAR*

---

\*      Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.